1 | Jose DeCastro
1258 Franklin St.
2 | Santa Monica, CA 90404
(310) 963-2445
3 | chille@situationcreator.com

FILED _____ RECEIVED ON
_____ ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

MAR 04 2024

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

4

5 | **UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

6

7 | JOSE DECASTRO,                     ) Case No.:   **2:24-cv-00435-DJA**
                     Plaintiff,        )
8 |                                    ) **COMPLAINT**
   v.                                  )
9 |                                    ) (Claim of Unconstitutionality)
   EVAN MCKNIGHT; PAM WAGNER;          ) (Demand for Jury Trial)
10 | BRAD SPOLJARIC; JOHN CHAPMAN;      )
   CHANCE BLANKENSHIP; ROBERT          ) **28 U.S. Code § 2403 Certification**
11 | FOUCH; LAWRENCE COUNTY            ) **Requested by Clerk** RE O.R.C. 2911.21
   COMMISSIONERS; CITY OF IRONTON      )
12 | OHIO; DOE GOVERNMENT ENTITY; and   )
   DOES 1 to 10 inclusive,             )
13 |                     Defendants.    )
   _____)

14

15 | **COMPLAINT**

   1. Plaintiff Jose Maria DeCastro ("Plaintiff" or "I"), a member of the press who was

16 | investigating police corruption in Ironton Ohio, was recording police and peacefully protesting,

17 | in exercise of his first amendment rights, at the Ironton Ohio City Hall in the Lawrence County

18 | of Ohio. Defendants, under the guise of enforcing the city hall's business hours and disorderly

19 | conduct, after wrongfully denying Plaintiff a permit which Plaintiff protested against, without

20 | reasonable suspicion that Plaintiff was involved in any criminal activity, without probable cause

21 | of Plaintiff having violated a crime, and without a warrant, did interfere with and rob Plaintiff of

22 | his liberties while he was in a place that he was lawfully allowed to be, while Plaintiff was

23

1 performing constitutionally protected activities. The officers arrested, battered, handcuffed,

2 searched Plaintiff and his possessions without a warrant, and seized and destroyed his property.

3     2. Sadly, the abusive treatment Plaintiff endured for merely asserting his rights and

4 recording the police is not unusual or surprising. This civil rights action seeks to vindicate

5 Plaintiff's constitutional and statutory rights and hold the officers and their departments

6 accountable for biased policing practices and the policies (or absence of policies) that resulted in

7 these practices.

8                           **PARTIES**

9     3. Plaintiff Jose Maria DeCastro is an adult over the age of eighteen, a member of the press,

10 and a resident of Las Vegas, Nevada.

11     4. Defendant City of Ironton Ohio ("Ironton") is a municipal corporation, a body politic

12 which may be sued. Ironton Police Department ("IPD") is a department of the City of Ironton

13 Ohio created under Chapter 238 of Ironton, OH Code of Ordinances. Defendant Ironton at all

14 times relevant hereto, operated, oversaw, and managed employees Pam Wagner, Brad Spoljaric,

15 Chance Blankenship, Evan McKnight, Robert Fouch, and Does 1 to 7.

16     5. Defendant Lawrence County Commissioners ("Lawrence County") operate and govern

17 the Lawrence County Sheriff's Office ("Sheriff") and the Lawrence County Jail ("Jail") under

18 the color of state law and may be sued under Ohio Rev. Code § 305.12. Defendant Lawrence

19 County at all times relevant hereto, operated, oversaw, and managed employees John Chapman

20 and Does 9 to 10.

21     6. Defendant Evan McKnight ("McKnight") is, and at all relevant times was, an officer

22 with the IPD. In doing the things herein alleged, McKnight was acting under the color of state

23 law and in the course and scope of his employment with Ironton. McKnight is sued in his

1  performing constitutionally protected activities. The officers arrested, battered, handcuffed,

2  searched Plaintiff and his possessions without a warrant, and seized and destroyed his property.

3       2. Sadly, the abusive treatment Plaintiff endured for merely asserting his rights and

4  recording the police is not unusual or surprising. This civil rights action seeks to vindicate

5  Plaintiff's constitutional and statutory rights and hold the officers and their departments

6  accountable for biased policing practices and the policies (or absence of policies) that resulted in

7  these practices.

8                                    **PARTIES**

9       3. Plaintiff Jose Maria DeCastro is an adult over the age of eighteen, a member of the press,

10  and a resident of Las Vegas, Nevada.

11       4. Defendant City of Ironton Ohio ("Ironton") is a municipal corporation, a body politic

12  which may be sued. Ironton Police Department ("IPD") is a department of the City of Ironton

13  Ohio created under Chapter 238 of Ironton, OH Code of Ordinances. Defendant Ironton at all

14  times relevant hereto, operated, oversaw, and managed employees Pam Wagner, Brad Spoljaric,

15  Chance Blankenship, Evan McKnight, Robert Fouch, and Does 1 to 7.

16       5. Defendant Lawrence County Commissioners ("Lawrence County") operate and govern

17  the Lawrence County Sheriff's Office ("Sheriff") and the Lawrence County Jail ("Jail") under

18  the color of state law and may be sued under Ohio Rev. Code § 305.12. Defendant Lawrence

19  County at all times relevant hereto, operated, oversaw, and managed employees John Chapman

20  and Does 9 to 10.

21       6. Defendant Evan McKnight ("McKnight") is, and at all relevant times was, an officer

22  with the IPD. In doing the things herein alleged, McKnight was acting under the color of state

23  law and in the course and scope of his employment with Ironton. McKnight is sued in his

                                          2

1 | individual capacity.

2 | 7. Defendant Brad Spoljaric ("Spoljaric") is, and at all relevant times was, an officer with

3 | the IPD. In doing the things herein alleged, Spoljaric was acting under the color of state law and

4 | in the course and scope of his employment with Ironton. Spoljaric is sued in his individual

5 | capacity.

6 | 8. Defendant Chance Blankenship ("Blankenship") is, and at all relevant times was, an

7 | officer with the IPD. In doing the things herein alleged, Blankenship was acting under the color

8 | of state law and in the course and scope of his employment with Ironton. Blankenship is sued in

9 | his individual capacity.

10 | 9. Defendant Robert Fouch ("Fouch") is, and at all relevant times was, an officer with the

11 | IPD. In doing the things herein alleged, Fouch was acting under the color of state law and in the

12 | course and scope of his employment with Ironton. Fouch is sued in his individual capacity.

13 | 10. Defendant Pam Wagner ("Wagner") is, and at all relevant times was, a supervisor with

14 | the IPD. In doing the things herein alleged, Wagner was acting under color of state law and in

15 | the course and scope of her employment with Ironton. Wagner is sued in her individual capacity,

16 | including in her capacity as a supervisor.

17 | 11. Defendant John Chapman ("Chapman") is, and at all relevant times was, a supervisor

18 | with the Sheriff's department. In doing the things herein alleged, Chapman was acting under

19 | color of state law and in the course and scope of his employment with Lawrence County.

20 | Chapman is sued in his individual capacity.

21 | 12. Doe #1 is believed to be an employee of either the Ironton Municipal Court or

22 | Lawrence County Court or Lawrence County Court of Common Pleas, possibly a clerk, and

23 | possibly with the first name of Samantha ("Samantha"). Samantha can only be identified as the

1 individual capacity.

2     7. Defendant Brad Spoljaric ("Spoljaric") is, and at all relevant times was, an officer with

3 the IPD. In doing the things herein alleged, Spoljaric was acting under the color of state law and

4 in the course and scope of his employment with Ironton. Spoljaric is sued in his individual

5 capacity.

6     8. Defendant Chance Blankenship ("Blankenship") is, and at all relevant times was, an

7 officer with the IPD. In doing the things herein alleged, Blankenship was acting under the color

8 of state law and in the course and scope of his employment with Ironton. Blankenship is sued in

9 his individual capacity.

10     9. Defendant Robert Fouch ("Fouch") is, and at all relevant times was, an officer with the

11 IPD. In doing the things herein alleged, Fouch was acting under the color of state law and in the

12 course and scope of his employment with Ironton. Fouch is sued in his individual capacity.

13     10. Defendant Pam Wagner ("Wagner") is, and at all relevant times was, a supervisor with

14 the IPD. In doing the things herein alleged, Wagner was acting under color of state law and in

15 the course and scope of her employment with Ironton. Wagner is sued in her individual capacity,

16 including in her capacity as a supervisor.

17     11. Defendant John Chapman ("Chapman") is, and at all relevant times was, a supervisor

18 with the Sheriff's department. In doing the things herein alleged, Chapman was acting under

19 color of state law and in the course and scope of his employment with Lawrence County.

20 Chapman is sued in his individual capacity.

21     12. Doe #1 is believed to be an employee of either the Ironton Municipal Court or

22 Lawrence County Court or Lawrence County Court of Common Pleas, possibly a clerk, and

23 possibly with the first name of Samantha ("Samantha"). Samantha can only be identified as the

3

1   person making the defamatory statement about Plaintiff by telephone to Darin Haberkorn on

2   April 1, 2022 who identified herself as "Samantha at the Clerk of Courts". Plaintiff will amend

3   this complaint to show the true name and capacity of Samantha if and when the same are

4   ascertained. Doe #8 is believed to be Samantha's supervisor.

5       13. Doe Government Entity is the employer of Doe #1 and Doe #8. Most likely to be the

6   Ironton Municipal Court created under Ohio Rev. Code §§ 1907.01 through 1907.57 or

7   Lawrence County Court created under Ohio Rev. Code §§ 1901.44 through 1901.44. Both of

8   which are created not under the Ohio Constitution, but under statute, and can be sued. Doe

9   Government Entity may also be Lawrence County Court of Common Pleas, which has Eleventh

10  Amendment immunity from suit. Plaintiff is not suing the State of Ohio.

11      14. The true names and capacities, whether individual, corporate, associate, or otherwise,

12  of Defendants sued herein as Does 1-10, inclusive, are unknown to Plaintiff, who therefore sues

13  said defendants by such fictitious names. Plaintiff will amend this Complaint to show the true

14  names and capacities if and when the same are ascertained. Plaintiff is informed and believes,

15  and thereon alleges, that said Defendants, and each of them, are responsible in some manner for

16  Plaintiff's damages as herein alleged. Each reference in this complaint to "defendant",

17  "defendants", "Defendants", or a specifically named defendant also refers to all "Doe"

18  defendants. Any reference to "Police" includes IPD and officers of the Sheriff's office.

19      15. Plaintiff is informed and believes and thereon alleges that each of the Defendants sued

20  herein was negligently, wrongfully, and otherwise responsible in some manner for the events and

21  happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff.

22  Further, one or more Doe Defendants was at all material times responsible for the hiring,

23  training, supervision, and discipline of other defendants, including the individually named and

1  person making the defamatory statement about Plaintiff by telephone to Darin Haberkorn on

2  April 1, 2022 who identified herself as "Samantha at the Clerk of Courts". Plaintiff will amend

3  this complaint to show the true name and capacity of Samantha if and when the same are

4  ascertained. Doe #8 is believed to be Samantha's supervisor.

5      13. Doe Government Entity is the employer of Doe #1 and Doe #8. Most likely to be the

6  Ironton Municipal Court created under Ohio Rev. Code §§ 1907.01 through 1907.57 or

7  Lawrence County Court created under Ohio Rev. Code §§ 1901.44 through 1901.44. Both of

8  which are created not under the Ohio Constitution, but under statute, and can be sued. Doe

9  Government Entity may also be Lawrence County Court of Common Pleas, which has Eleventh

10 Amendment immunity from suit. Plaintiff is not suing the State of Ohio.

11     14. The true names and capacities, whether individual, corporate, associate, or otherwise,

12 of Defendants sued herein as Does 1-10, inclusive, are unknown to Plaintiff, who therefore sues

13 said defendants by such fictitious names. Plaintiff will amend this Complaint to show the true

14 names and capacities if and when the same are ascertained. Plaintiff is informed and believes,

15 and thereon alleges, that said Defendants, and each of them, are responsible in some manner for

16 Plaintiff's damages as herein alleged. Each reference in this complaint to "defendant",

17 "defendants", "Defendants", or a specifically named defendant also refers to all "Doe"

18 defendants. Any reference to "Police" includes IPD and officers of the Sheriff's office.

19     15. Plaintiff is informed and believes and thereon alleges that each of the Defendants sued

20 herein was negligently, wrongfully, and otherwise responsible in some manner for the events and

21 happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff.

22 Further, one or more Doe Defendants was at all material times responsible for the hiring,

23 training, supervision, and discipline of other defendants, including the individually named and

1  Doe Defendants.

2      16. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned

3  each of the Defendants, including all defendants sued under fictitious names, was the agent

4  and/or employee of each of the other Defendants, and in doing the things hereinafter alleged was

5  acting within the course and scope of such agency and employment.

6      17. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was

7  at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, an/or

8  alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within

9  the course and scope of that relationship. Plaintiff is further informed and believes, and thereon

10 alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the

11 remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as

12 alleged herein, except as may be hereinafter otherwise specifically alleged. At all material times,

13 each Defendant was an integral participant, jointly engaged in constitutionally violative,

14 unlawful, and/or tortious activity, resulting in the deprivation of Plaintiff's constitutional rights

15 and other actionable harm.

16                          **JURISDICTION AND VENUE**

17      18. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

18 1343(a)(3)-(4) because it arises under the Constitution and laws of the United States, as it is

19 being brought to obtain compensatory and punitive damages for the deprivation, under color of

20 state law, of the rights of a citizen of the United States that are secured by the United States

21 Constitution, pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1988. This Court has supplemental

22 jurisdiction over the claims arising under Ohio, Nevada, and Common law pursuant to 28 U.S.C

23 § 1367(a). Claims for federal law violations also fall within the jurisdiction of this Court.

1    Doe Defendants.

2        16. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned

3    each of the Defendants, including all defendants sued under fictitious names, was the agent

4    and/or employee of each of the other Defendants, and in doing the things hereinafter alleged was

5    acting within the course and scope of such agency and employment.

6        17. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was

7    at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, an/or

8    alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within

9    the course and scope of that relationship. Plaintiff is further informed and believes, and thereon

10   alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the

11   remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as

12   alleged herein, except as may be hereinafter otherwise specifically alleged. At all material times,

13   each Defendant was an integral participant, jointly engaged in constitutionally violative,

14   unlawful, and/or tortious activity, resulting in the deprivation of Plaintiff's constitutional rights

15   and other actionable harm.

16                              **JURISDICTION AND VENUE**

17       18. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

18   1343(a)(3)-(4) because it arises under the Constitution and laws of the United States, as it is

19   being brought to obtain compensatory and punitive damages for the deprivation, under color of

20   state law, of the rights of a citizen of the United States that are secured by the United States

21   Constitution, pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1988. This Court has supplemental

22   jurisdiction over the claims arising under Ohio, Nevada, and Common law pursuant to 28 U.S.C

23   § 1367(a). Claims for federal law violations also fall within the jurisdiction of this Court.

1    Additionally, this court has federal diversity jurisdiction under 28 U.S.C. § 1332. The

2  amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and

3  there is complete diversity of citizenship between the parties.

4    19. This Court is the proper venue pursuant to 28 U.S.C. §§ 1391(b)(2-3) because the

5  defamatory conduct of defendants outside of this forum has reached potential customers of

6  Plaintiff in this forum. The defamatory conduct of defendants was targeted at law enforcement

7  personnel in this forum for the purpose of injuring Plaintiff in this forum. Plaintiff has suffered

8  economic harm in this forum. Defendants operate a criminal syndicate giving this court

9  jurisdiction under Nev. Rev. Stat. § 14.065 and Nev. Rev. Stat. § 207.400 and 18 U.S.C. § 1965

10  (b).

11                          **GENERAL FACTUAL ALLEGATIONS**

12    20. The majority of the factual allegations were broadcast to YouTube, for transparency of

13  my investigation of government corruption in the city of Ironton Ohio. Where I report actions of

14  entities, I leave out accidental actions. All actions are therefore alleged to be deliberate. Where

15  actions harm others, they are alleged to be with malice and through the totality of the

16  circumstances it is proven. At all times, defendants lacked qualified immunity or other

17  privileges. Plaintiff hereby makes the following factual allegations:

18    21. **March 21, 2022.** I headed to Ironton Ohio to investigate claims by Sarah Page ("Page")

19  that she had been stalked and had her rights violated repeatedly for multiple years by Police in

20  retaliation for Page accusing McKnight of stealing a wallet.

21    22. I visited the IPD station and talked to Wagner about the harassment of Page and to file

22  a complaint. Wagner admitted to having viewed the videos of Page's incident. Wagner asked me

23  to leave and she walked away.

6

1    Additionally, this court has federal diversity jurisdiction under 28 U.S.C. § 1332. The

2  amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and

3  there is complete diversity of citizenship between the parties.

4    19. This Court is the proper venue pursuant to 28 U.S.C. §§ 1391(b)(2-3) because the

5  defamatory conduct of defendants outside of this forum has reached potential customers of

6  Plaintiff in this forum. The defamatory conduct of defendants was targeted at law enforcement

7  personnel in this forum for the purpose of injuring Plaintiff in this forum. Plaintiff has suffered

8  economic harm in this forum. Defendants operate a criminal syndicate giving this court

9  jurisdiction under Nev. Rev. Stat. § 14.065 and Nev. Rev. Stat. § 207.400 and 18 U.S.C. § 1965

10  (b).

11                        **GENERAL FACTUAL ALLEGATIONS**

12    20. The majority of the factual allegations were broadcast to YouTube, for transparency of

13  my investigation of government corruption in the city of Ironton Ohio. Where I report actions of

14  entities, I leave out accidental actions. All actions are therefore alleged to be deliberate. Where

15  actions harm others, they are alleged to be with malice and through the totality of the

16  circumstances it is proven. At all times, defendants lacked qualified immunity or other

17  privileges. Plaintiff hereby makes the following factual allegations:

18    21. **March 21, 2022.** I headed to Ironton Ohio to investigate claims by Sarah Page ("Page")

19  that she had been stalked and had her rights violated repeatedly for multiple years by Police in

20  retaliation for Page accusing McKnight of stealing a wallet.

21    22. I visited the IPD station and talked to Wagner about the harassment of Page and to file

22  a complaint. Wagner admitted to having viewed the videos of Page's incident. Wagner asked me

23  to leave and she walked away.

6

23. Shortly after, I went to the Ironton Municipal Court where I was battered by court officer Mark Harmon and court officer Rick Robinson who threatened to arrest me if I didn't leave a public area because I was somehow interfering with what was going on in an adjacent room. John Doe officer refused to identify himself. Three other employees refused to provide John Doe's name, including Judge Kevin Waldo ("Waldo"). Before being elected as the judge of the municipal court, Waldo was the assistant prosecuting attorney for Lawrence County and Ironton City Council member.

24. Shortly after, in the IPD parking lot, Page asked Wagner for complaint forms. Wagner again refused to take a complaint, lied that there were complaint forms on the IPD website, and said, "If you moved forward with a false police report, you can be prosecuted for it." (As of the date of this complaint, there are still no complaint forms available on the IPD website.)

25. **March 22, 2022.** I returned to the Ironton Municipal court to talk to Waldo about the corruption of his Police. On the way in, I verbally confronted Fouch for violating people's rights, as he was one of the ones harassing Page. Fouch and I discussed meeting at the gym for a wrestling match.

26. After leaving my meeting with Waldo, I stopped for coffee where I spoke to a citizen and told him that I wanted to talk to people who had issues with the IPD. The citizen said that it would not be hard to find people out on the street who have complaints about the IPD.

27. Later, I verbally confronted McKnight outside of the IPD station, for stealing Page's wallet. I confronted one of the Blankenships (there are two at the IPD), asking if it was true that his father was a drug dealer, and asked McKnight if he'd blinded mail carrier Teresa Ward ("Ward"), referring to when he had illegally pepper sprayed Ward, which still affects her vision. I also had a chance to ask Wagner if she was going to watch my video premiere of Page's story,

7

23. Shortly after, I went to the Ironton Municipal Court where I was battered by court officer Mark Harmon and court officer Rick Robinson who threatened to arrest me if I didn't leave a public area because I was somehow interfering with what was going on in an adjacent room. John Doe officer refused to identify himself. Three other employees refused to provide John Doe's name, including Judge Kevin Waldo ("Waldo"). Before being elected as the judge of the municipal court, Waldo was the assistant prosecuting attorney for Lawrence County and Ironton City Council member.

24. Shortly after, in the IPD parking lot, Page asked Wagner for complaint forms. Wagner again refused to take a complaint, lied that there were complaint forms on the IPD website, and said, "If you moved forward with a false police report, you can be prosecuted for it." (As of the date of this complaint, there are still no complaint forms available on the IPD website.)

25. **March 22, 2022.** I returned to the Ironton Municipal court to talk to Waldo about the corruption of his Police. On the way in, I verbally confronted Fouch for violating people's rights, as he was one of the ones harassing Page. Fouch and I discussed meeting at the gym for a wrestling match.

26. After leaving my meeting with Waldo, I stopped for coffee where I spoke to a citizen and told him that I wanted to talk to people who had issues with the IPD. The citizen said that it would not be hard to find people out on the street who have complaints about the IPD.

27. Later, I verbally confronted McKnight outside of the IPD station, for stealing Page's wallet. I confronted one of the Blankenships (there are two at the IPD), asking if it was true that his father was a drug dealer, and asked McKnight if he'd blinded mail carrier Teresa Ward ("Ward"), referring to when he had illegally pepper sprayed Ward, which still affects her vision. I also had a chance to ask Wagner if she was going to watch my video premiere of Page's story,

7

1   and Wagner said, "I don't do videos."

2       28. After my video premier on Page, eleven people reached out to me with complaints

3   about the IPD, with the majority of the complaints being about McKnight, followed by Wagner,

4   and then a Blankenship and Fouch. The majority of the complaints were about pretextual stops

5   and excessive force. Many victims of the IPD had scars on their wrists and suffered neuropathy

6   from abusive handcuff procedures. Additionally, the majority of them were afraid of further

7   retaliation and wanted me not to reveal their names. There are also many complaints about

8   misdemeanor arrests. At the Jail, there are numerous complaints about illegal body cavity

9   searches without reasonable suspicion, overcrowding, and unnecessary violence from guards and

10  prisoners. There was a significant number of people mentioning the phrase "squat and cough" in

11  relation to body cavity searches. The Ironton Tribune interviewed Sheriff Tim Sexton in 2005,

12  who admitted to overcrowding, and that the jail was originally built to house only 52 inmates.

13      29. **March 23, 2022.** I went with Page to file a complaint with the Sheriff about the

14  violation of Page's civil rights. We met with Sheriff Jeff Lawless ("Lawless"), who was also the

15  previous warden at the jail. At this time, I'd communicated with approximately 50 people who

16  had similar stories of their rights being violated by the IPD.

17      30. Later, I published interviews with two victims of the IPD. The abuses by the IPD

18  included excessive force and illegal seizure. I also interviewed Chance Blakenship's own brother,

19  Derik, whom Branden Blankenship arrested.

20      31. In the evening, I published an interview with a victim of Jason Newman. Newman is an

21  officer at the Sheriff's office. The victim has filed a civil rights lawsuit.

22      32. **March 24, 2022.** I published interviews of two victims of McKnight and a

23  Blankenship. Also, an interview with a family member of Larry Kinstler. Kinstler filed a civil

8

1 │ and Wagner said, "I don't do videos."

2 │  28. After my video premier on Page, eleven people reached out to me with complaints

3 │ about the IPD, with the majority of the complaints being about McKnight, followed by Wagner,

4 │ and then a Blankenship and Fouch. The majority of the complaints were about pretextual stops

5 │ and excessive force. Many victims of the IPD had scars on their wrists and suffered neuropathy

6 │ from abusive handcuff procedures. Additionally, the majority of them were afraid of further

7 │ retaliation and wanted me not to reveal their names. There are also many complaints about

8 │ misdemeanor arrests. At the Jail, there are numerous complaints about illegal body cavity

9 │ searches without reasonable suspicion, overcrowding, and unnecessary violence from guards and

10 │ prisoners. There was a significant number of people mentioning the phrase "squat and cough" in

11 │ relation to body cavity searches. The Ironton Tribune interviewed Sheriff Tim Sexton in 2005,

12 │ who admitted to overcrowding, and that the jail was originally built to house only 52 inmates.

13 │  29. **March 23, 2022.** I went with Page to file a complaint with the Sheriff about the

14 │ violation of Page's civil rights. We met with Sheriff Jeff Lawless ("Lawless"), who was also the

15 │ previous warden at the jail. At this time, I'd communicated with approximately 50 people who

16 │ had similar stories of their rights being violated by the IPD.

17 │  30. Later, I published interviews with two victims of the IPD. The abuses by the IPD

18 │ included excessive force and illegal seizure. I also interviewed Chance Blakenship's own brother,

19 │ Derik, whom Branden Blankenship arrested.

20 │  31. In the evening, I published an interview with a victim of Jason Newman. Newman is an

21 │ officer at the Sheriff's office. The victim has filed a civil rights lawsuit.

22 │  32. **March 24, 2022.** I published interviews of two victims of McKnight and a

23 │ Blankenship. Also, an interview with a family member of Larry Kinstler. Kinstler filed a civil

1  rights lawsuit against the county after being beaten and choked in the Jail by guards. Kinstler

2  won the suit and suspiciously died a few days later.

3      33. Deputy Jeremy Hanshaw ("Hanshaw") is famous for being indicted by the DOJ for

4  being captured on video choking the above-mentioned Kinstler at the Jail. After being found

5  innocent of the criminal charges, Hanshaw was placed as the resource officer at Ironton High

6  School. Lawless said because of the union agreement, he had to return Hanshaw to work since he

7  was found innocent. However, one of Hanshaw's co-defendants was terminated because he

8  hadn't been a deputy long enough to have union protection. The deputy fired contributed far less

9  to the abuse than Hanshaw.

10     34. Another victim was a high school kid who had been sleeping in front of the school in

11  his truck. Hanshaw did a wellness check on him which included forcing the victim's truck door

12  open and when the victim grabbed for his phone to record the incident, Hanshaw "double-handed

13  choked" the victim over his center console, pulled him out of the car, handcuffed him and

14  arrested him. The high school kid was strip-searched at the jail.

15     35. I also interviewed the family members of a victim who was tased and beaten by

16  McKnight and a Blankenship. The family members had recorded the beating, but Wagner was

17  called to the family's house, where Wagner demanded the family members delete the recordings

18  or they would have their devices taken, after which the family members did delete the

19  recordings.

20     36. A victim was arrested on his own property, without a warrant, for openly carrying a

21  firearm by Hanshaw, who said "I hate you wannabee YouTube stars."

22     37. I interviewed a woman who spat her long hair out of her mouth while being processed

23  at the county jail which resulted in a Spoljaric choking her until a female employee named Joy at

1  rights lawsuit against the county after being beaten and choked in the Jail by guards. Kinstler

2  won the suit and suspiciously died a few days later.

3        33. Deputy Jeremy Hanshaw ("Hanshaw") is famous for being indicted by the DOJ for

4  being captured on video choking the above-mentioned Kinstler at the Jail. After being found

5  innocent of the criminal charges, Hanshaw was placed as the resource officer at Ironton High

6  School. Lawless said because of the union agreement, he had to return Hanshaw to work since he

7  was found innocent. However, one of Hanshaw's co-defendants was terminated because he

8  hadn't been a deputy long enough to have union protection. The deputy fired contributed far less

9  to the abuse than Hanshaw.

10        34. Another victim was a high school kid who had been sleeping in front of the school in

11  his truck. Hanshaw did a wellness check on him which included forcing the victim's truck door

12  open and when the victim grabbed for his phone to record the incident, Hanshaw "double-handed

13  choked" the victim over his center console, pulled him out of the car, handcuffed him and

14  arrested him. The high school kid was strip-searched at the jail.

15        35. I also interviewed the family members of a victim who was tased and beaten by

16  McKnight and a Blankenship. The family members had recorded the beating, but Wagner was

17  called to the family's house, where Wagner demanded the family members delete the recordings

18  or they would have their devices taken, after which the family members did delete the

19  recordings.

20        36. A victim was arrested on his own property, without a warrant, for openly carrying a

21  firearm by Hanshaw, who said "I hate you wannabee YouTube stars."

22        37. I interviewed a woman who spat her long hair out of her mouth while being processed

23  at the county jail which resulted in a Spoljaric choking her until a female employee named Joy at

1    the jail told him to stop, shortly before the woman passed out. The woman was arrested for being

2    the victim of a domestic violence complaint and the charges were dropped before her first

3    hearing. At another time the same woman was arrested for an out-of-date warrant even though

4    the woman had evidence that the warrant had been quashed. This woman is one of the victims

5    with scars on her wrists and neuropathy.

6        38. I heard from parents that were pulled over by McKnight for "leaving a known drug

7    area". Multiple times McKnight pulled the couple over, and he asked the passenger for a driver's

8    license each time. One time, their front door was kicked in by the Police for a bench warrant on

9    one of the parents, the officers pointed their weapons at the other parent and said that the couple

10   "have no rights".

11       I also heard from citizens who claimed the Police were corrupt and confiscating drugs for

12   their own use. This was later proven when IPD officer Brad Spoljaric admitted to doing this.

13       39. I interviewed a first cousin of the Blankenship officer brothers who said that officers of

14   the IPD are bringing women to the IPD station and having sex with them to have tickets dropped.

15   The officers named by this man were McKnight and Hanshaw. This man also reported

16   occasional overpopulation of the jail with over 100 inmates. He also said that after having an

17   inmate use their hands to spread their butt cheeks and lift their scrotum, the inmate next has to

18   put their dirty fingers in their mouth. This man also continues to be harassed and retaliated

19   against because he started a Facebook page critical of the IPD. To corroborate this story, I also

20   had a telephone interview with a person who reported that IPD officer Joe Akers ("Akers") had

21   sex with an intoxicated woman who came to the IPD station to make a report.

22       40. By this time, I'd heard from over 100 citizens with complaints about police, county

23   sheriffs, and corrections officers.

10

1 the jail told him to stop, shortly before the woman passed out. The woman was arrested for being

2 the victim of a domestic violence complaint and the charges were dropped before her first

3 hearing. At another time the same woman was arrested for an out-of-date warrant even though

4 the woman had evidence that the warrant had been quashed. This woman is one of the victims

5 with scars on her wrists and neuropathy.

6     38. I heard from parents that were pulled over by McKnight for "leaving a known drug

7 area". Multiple times McKnight pulled the couple over, and he asked the passenger for a driver's

8 license each time. One time, their front door was kicked in by the Police for a bench warrant on

9 one of the parents, the officers pointed their weapons at the other parent and said that the couple

10 "have no rights".

11     I also heard from citizens who claimed the Police were corrupt and confiscating drugs for

12 their own use. This was later proven when IPD officer Brad Spoljaric admitted to doing this.

13     39. I interviewed a first cousin of the Blankenship officer brothers who said that officers of

14 the IPD are bringing women to the IPD station and having sex with them to have tickets dropped.

15 The officers named by this man were McKnight and Hanshaw. This man also reported

16 occasional overpopulation of the jail with over 100 inmates. He also said that after having an

17 inmate use their hands to spread their butt cheeks and lift their scrotum, the inmate next has to

18 put their dirty fingers in their mouth. This man also continues to be harassed and retaliated

19 against because he started a Facebook page critical of the IPD. To corroborate this story, I also

20 had a telephone interview with a person who reported that IPD officer Joe Akers ("Akers") had

21 sex with an intoxicated woman who came to the IPD station to make a report.

22     40. By this time, I'd heard from over 100 citizens with complaints about police, county

23 sheriffs, and corrections officers.

41. Later, I was informed by multiple citizens that the Police were having a private meeting regarding my presence in the city at "The Armory".

42. Multiple people reported that the Ironton PD maintains a list of people that they harass.

43. **March 25, 2022.** WOWK-TV, the CBS channel 13 news in Ironton, reported "Ironton PD says that both Ironton High School and Ironton Elementary School are on a soft lockdown. They say the lockdown is due to a 'concerning' video from [Plaintiff] that was sent to a student or a parent." Later the same day, the news station confirmed with the school superintendent that the reporting was not accurate. No schools in the district were under lockdown. A reporter with WOWK-TV also confirmed with me that they found that I didn't send any video.

44. My reputation was harmed by this defamatory claim, including statements from school leaders saying that they were "hyper-aware" of my presence in the community. This report also led to my being harassed, including being threatened on the streets of Ironton by an angry parent. Yahoo Money picked up the false story by the Ironton Tribune, who never listed a retraction. Later the same day, WOWK-TV reported further false attacks on my character by the IPD, saying, "According to Ironton Police, a local restaurant closed out of safety concerns, and at least two other restaurants asked YouTuber Chille DeCastro to leave." This further harmed my reputation.

45. I went to the mayor's office and attempted to get a meeting with Mayor Sam Cramblit ("Cramblit") but was unable to. Cramblit's own father and paternal grandmother had both filed a § 1983 claim against the IPD in the 1990s. (While in Ironton, I would visit the Mayor's office almost daily to try to get an interview with Cramblit, but he always avoided me. At one time, he literally ran away from me and hid around a corner.)

46. I interviewed a woman that said she was raped by the Horsecreek Riders Motorcycle

11

41. Later, I was informed by multiple citizens that the Police were having a private meeting regarding my presence in the city at "The Armory".

42. Multiple people reported that the Ironton PD maintains a list of people that they harass.

43. **March 25, 2022.** WOWK-TV, the CBS channel 13 news in Ironton, reported "Ironton PD says that both Ironton High School and Ironton Elementary School are on a soft lockdown. They say the lockdown is due to a 'concerning' video from [Plaintiff] that was sent to a student or a parent." Later the same day, the news station confirmed with the school superintendent that the reporting was not accurate. No schools in the district were under lockdown. A reporter with WOWK-TV also confirmed with me that they found that I didn't send any video.

44. My reputation was harmed by this defamatory claim, including statements from school leaders saying that they were "hyper-aware" of my presence in the community. This report also led to my being harassed, including being threatened on the streets of Ironton by an angry parent. Yahoo Money picked up the false story by the Ironton Tribune, who never listed a retraction. Later the same day, WOWK-TV reported further false attacks on my character by the IPD, saying, "According to Ironton Police, a local restaurant closed out of safety concerns, and at least two other restaurants asked YouTuber Chille DeCastro to leave." This further harmed my reputation.

45. I went to the mayor's office and attempted to get a meeting with Mayor Sam Cramblit ("Cramblit") but was unable to. Cramblit's own father and paternal grandmother had both filed a § 1983 claim against the IPD in the 1990s. (While in Ironton, I would visit the Mayor's office almost daily to try to get an interview with Cramblit, but he always avoided me. At one time, he literally ran away from me and hid around a corner.)

46. I interviewed a woman that said she was raped by the Horsecreek Riders Motorcycle

1   Club, which works with the Blankenship family dealing drugs. When the woman went to file a

2   report with the IPD, she was interviewed behind the station and warned not to file the report, or

3   the motorcycle club would come for her family.

4       47. I interviewed a man who was arrested by Spoljaric for disorderly conduct for being

5   annoyed and refusing to leave a public area after a "lawful order" to do so. Once in jail, the man

6   was beaten up by the jailers, put in a restraint chair at the jail for several hours, and told to pee

7   himself, which he did.

8       48. I tried to interview Blankenship and McKnight. Blankenship said, "No comment".

9   McKnight tried to order me from the public street.

10      49. In the evening, I found Akers, of the IPD, dressed in civilian clothes and driving a

11  Chevy pickup, following me around when I turned around and confronted him.

12      50. I interviewed Angela Ratcliff who was handcuffed and then tased in her back while in

13  handcuffs, in her own porch. Ratcliff was one of many people who reported that when the Police

14  show up for a domestic disturbance, they arrest everyone, not just the abuser. She had also been

15  strip-searched in jail, even though she was arrested for domestic abuse and not drugs. Ratcliff's

16  family member also told stories of being arrested and was one of many people who reported that

17  when arrested in Ironton, the Police take cash that you're carrying and keep it.

18      52. **March 26, 2022.** A confidential informant called me and told me that the Blankenships

19  planned on planting drugs on me and arresting me.

20      53. **March 27, 2022.** I Interviewed Eugune Aldridge who said the IPD barged into his

21  house, looking for his brother. Aldridge was arrested for refusing to aid in the investigation and

22  charged with felony harboring a fugitive. Aldridge was required to lay on his cuffs in the back of

23  the car, causing bruising on his wrists. He was also strip-searched at the county jail. Aldridge

Club, which works with the Blankenship family dealing drugs. When the woman went to file a report with the IPD, she was interviewed behind the station and warned not to file the report, or the motorcycle club would come for her family.

47. I interviewed a man who was arrested by Spoljaric for disorderly conduct for being annoyed and refusing to leave a public area after a "lawful order" to do so. Once in jail, the man was beaten up by the jailers, put in a restraint chair at the jail for several hours, and told to pee himself, which he did.

48. I tried to interview Blankenship and McKnight. Blankenship said, "No comment". McKnight tried to order me from the public street.

49. In the evening, I found Akers, of the IPD, dressed in civilian clothes and driving a Chevy pickup, following me around when I turned around and confronted him.

50. I interviewed Angela Ratcliff who was handcuffed and then tased in her back while in handcuffs, in her own porch. Ratcliff was one of many people who reported that when the Police show up for a domestic disturbance, they arrest everyone, not just the abuser. She had also been strip-searched in jail, even though she was arrested for domestic abuse and not drugs. Ratcliff's family member also told stories of being arrested and was one of many people who reported that when arrested in Ironton, the Police take cash that you're carrying and keep it.

52. **March 26, 2022.** A confidential informant called me and told me that the Blankenships planned on planting drugs on me and arresting me.

53. **March 27, 2022.** I Interviewed Eugune Aldridge who said the IPD barged into his house, looking for his brother. Aldridge was arrested for refusing to aid in the investigation and charged with felony harboring a fugitive. Aldridge was required to lay on his cuffs in the back of the car, causing bruising on his wrists. He was also strip-searched at the county jail. Aldridge

12

1    was also directed to put his fingers in his mouth after using them to spread his butt cheeks and

2    lift his scrotum, by the same officer that arrested him. Aldridge said that the jail was

3    overcrowded with over 100 people in the jail. The police found his Aldridge's brother two days

4    later, not in Aldridge's house. Aldridge was denied a jury trial and found guilty, mostly because

5    the police report said that Aldridge had admitted to being guilty, which Aldridge hadn't done.

6        54. Spoljaric pulled his car up and pointed his headlights at me while I was parked at a gas

7    station, to intimidate me. I verbally confronted him, and he admitted to maintaining a log of my

8    location and activities.

9        55. I published an interview with Beth Rist, the first female police officer in Ironton. She

10   witnessed Wagner unnecessarily kicking Jesse Johnson in the leg while he was sleeping outside.

11   Rist had been hit in the back randomly by IPD Officer William Garland, for which she was

12   offered a cash settlement. Rist witnessed IPD Officer Rich Atkins pull a handcuffed subject out

13   of his patrol car and beat him for flicking a cigarette into the front seat. At the time, when Rist

14   would report violations, she was told not to rock the boat. She was investigating a murder once,

15   and while she was writing up the report, her fellow officers were rummaging through the house

16   stealing guns and cash. Rist witnessed IPD Officer Chad Gue ("Gue") unnecessarily hit a subject

17   in the back of the head to get the subject into the back of a car. IPD Officer Grover Carter would

18   regularly steal guns from the evidence room, and it was common knowledge among the IPD.

19       56. **March 28, 2022.** I interviewed a citizen that told me the story of Carl Clutters. Clutters

20   had died in Lawrence County Jail due to a subdural hematoma from hitting his head from being

21   pushed into his cell by a guard. Clutters was also being denied his medication. Clutter's family

22   sued for civil rights violations and won a settlement.

23       57. I interviewed a citizen who said he was arrested for using derogatory words about a

13

1  was also directed to put his fingers in his mouth after using them to spread his butt cheeks and

2  lift his scrotum, by the same officer that arrested him. Aldridge said that the jail was

3  overcrowded with over 100 people in the jail. The police found his Aldridge's brother two days

4  later, not in Aldridge's house. Aldridge was denied a jury trial and found guilty, mostly because

5  the police report said that Aldridge had admitted to being guilty, which Aldridge hadn't done.

6      54. Spoljaric pulled his car up and pointed his headlights at me while I was parked at a gas

7  station, to intimidate me. I verbally confronted him, and he admitted to maintaining a log of my

8  location and activities.

9      55. I published an interview with Beth Rist, the first female police officer in Ironton. She

10  witnessed Wagner unnecessarily kicking Jesse Johnson in the leg while he was sleeping outside.

11  Rist had been hit in the back randomly by IPD Officer William Garland, for which she was

12  offered a cash settlement. Rist witnessed IPD Officer Rich Atkins pull a handcuffed subject out

13  of his patrol car and beat him for flicking a cigarette into the front seat. At the time, when Rist

14  would report violations, she was told not to rock the boat. She was investigating a murder once,

15  and while she was writing up the report, her fellow officers were rummaging through the house

16  stealing guns and cash. Rist witnessed IPD Officer Chad Gue ("Gue") unnecessarily hit a subject

17  in the back of the head to get the subject into the back of a car. IPD Officer Grover Carter would

18  regularly steal guns from the evidence room, and it was common knowledge among the IPD.

19      56. **March 28, 2022.** I interviewed a citizen that told me the story of Carl Clutters. Clutters

20  had died in Lawrence County Jail due to a subdural hematoma from hitting his head from being

21  pushed into his cell by a guard. Clutters was also being denied his medication. Clutter's family

22  sued for civil rights violations and won a settlement.

23      57. I interviewed a citizen who said he was arrested for using derogatory words about a

1 police officer. He was subsequently denied his medication in jail and had a seizure as a result.

2 All his money was also stolen. He was also beaten by guards while in a restraint chair and tased

3 in the back while handcuffed. This man also said that his uncle was beaten by guards while in

4 jail. Finally, this man was one of several who reported to me that guards pay inmates to beat up

5 other inmates and the guards disable cell cameras to enable the beatings.

6      58. I interviewed a citizen who said her father had been arrested for possession of illegal

7 drugs and is being confined in a rehab facility as a condition of bail. I heard from other citizens

8 that Judge Waldo gives a similar post-conviction order.

9      59. I was told by several citizens that Waldo sends victims to rehab clinics that Judge Andy

10 Ballard benefits from, and that Ballard sends victims to rehab clinics that Waldo benefits from. I

11 was also told that commissioners, judges, and prosecutors benefit from the local rehab clinics.

12      60. I interviewed Donald Roberts, a relative of IPD officer Joe Akers, who felt above the

13 law due to that association. I witnessed Roberts batter a colleague member of the press who was

14 standing there filming. Roberts also assaulted me, threatening to murder me. I reported the

15 incident to IPD Officer Steve Wilson. Roberts was not cited. This attack was the result of IPD

16 and WOWK-TV's defamatory reporting.

17      61. There was a small group of Ironton citizens and IPD officers that did a "back the blue"

18 rally in downtown Ironton, targeting me and my presence in town. This rally was additionally the

19 result of IPD and WOWK-TV's defamatory reporting.

20      62. **March 29, 2022.** I published security camera footage showing Sheriff's Deputy

21 Jonathan Spojaric, who was responding to a 911 call that Kent Freeman had made. Spoljaric

22 pepper sprayed Freeman from the porch when Freeman refused to immediately exit his own

23 home. Spoljaric tased Freeman repeatedly for pain compliance while Freeman declared his

14

1    police officer. He was subsequently denied his medication in jail and had a seizure as a result.

2    All his money was also stolen. He was also beaten by guards while in a restraint chair and tased

3    in the back while handcuffed. This man also said that his uncle was beaten by guards while in

4    jail. Finally, this man was one of several who reported to me that guards pay inmates to beat up

5    other inmates and the guards disable cell cameras to enable the beatings.

6        58. I interviewed a citizen who said her father had been arrested for possession of illegal

7    drugs and is being confined in a rehab facility as a condition of bail. I heard from other citizens

8    that Judge Waldo gives a similar post-conviction order.

9        59. I was told by several citizens that Waldo sends victims to rehab clinics that Judge Andy

10   Ballard benefits from, and that Ballard sends victims to rehab clinics that Waldo benefits from. I

11   was also told that commissioners, judges, and prosecutors benefit from the local rehab clinics.

12       60. I interviewed Donald Roberts, a relative of IPD officer Joe Akers, who felt above the

13   law due to that association. I witnessed Roberts batter a colleague member of the press who was

14   standing there filming. Roberts also assaulted me, threatening to murder me. I reported the

15   incident to IPD Officer Steve Wilson. Roberts was not cited. This attack was the result of IPD

16   and WOWK-TV's defamatory reporting.

17       61. There was a small group of Ironton citizens and IPD officers that did a "back the blue"

18   rally in downtown Ironton, targeting me and my presence in town. This rally was additionally the

19   result of IPD and WOWK-TV's defamatory reporting.

20       62. **March 29, 2022.** I published security camera footage showing Sheriff's Deputy

21   Jonathan Spoljaric, who was responding to a 911 call that Kent Freeman had made. Spoljaric

22   pepper sprayed Freeman from the porch when Freeman refused to immediately exit his own

23   home. Spoljaric tased Freeman repeatedly for pain compliance while Freeman declared his

14

1   innocence and begged Spoljaric to stop tasing him. Freeman experienced a heart attack during

2   the incident and filed a § 1983 claim in April of 2022 that is still ongoing.

3       63. **March 29, 2022 Unlawful Arrest of Plaintiff.** At 3:05 P.M., I entered the Ironton City

4   Hall, a traditional public forum at 301 South 3rd Street, Ironton, Ohio 45638, through an

5   unlocked door.

6       64. Less than a minute later, I inquired about renting the common area of the city hall with

7   an employee behind a service window. The employee stated that the Mayor's office does that. I

8   mentioned that Cramblit had been avoiding me, but was told that Cramblit's secretary handles it,

9   and not Cramblit himself.

10      65. At 3:07 P.M. I reached Cramblit's office upstairs and was told that he had left for the

11  day already. I inquired about renting the lobby area. I was told that I would be given a piece of

12  paper to fill out. I was then given conflicting information that Cramblit had to approve the

13  request, so that I would be unable to rent the space today. I mentioned that since I'd been in

14  town, I'd been unable to get ahold of Cramblit and demanded that Cramblit be called on the

15  phone for authorization, or he could do a signature remotely. I continued to protest against the

16  violation of my right to use the public space. I offered to pay a fee and filled out the application,

17  checking the "Assemblage" box to rent the lobby starting at 3:15 P.M. on March 29, 2022. I left

18  the ending time blank. I updated my team and my invite for the constitutional rights class that I

19  had planned with the new location, expecting that we would be allowed to use the space without

20  our rights being violated, and that Cramblit would do the right thing and authorize the request.

21      66. At 3:16 P.M. I saw a sign erected by the City of Ironton in the City Hall that said that

22  "ANDERSON & ANDERSON, LAW FIRM" was a proud supporter of the IPD. Ironton

23  Prosecutor Brigham Anderson ("Anderson") is a member of this law firm, which clearly has

15

1   innocence and begged Spoljaric to stop tasing him. Freeman experienced a heart attack during

2   the incident and filed a § 1983 claim in April of 2022 that is still ongoing.

3       63. **March 29, 2022 Unlawful Arrest of Plaintiff.** At 3:05 P.M., I entered the Ironton City

4   Hall, a traditional public forum at 301 South 3rd Street, Ironton, Ohio 45638, through an

5   unlocked door.

6       64. Less than a minute later, I inquired about renting the common area of the city hall with

7   an employee behind a service window. The employee stated that the Mayor's office does that. I

8   mentioned that Cramblit had been avoiding me, but was told that Cramblit's secretary handles it,

9   and not Cramblit himself.

10      65. At 3:07 P.M. I reached Cramblit's office upstairs and was told that he had left for the

11  day already. I inquired about renting the lobby area. I was told that I would be given a piece of

12  paper to fill out. I was then given conflicting information that Cramblit had to approve the

13  request, so that I would be unable to rent the space today. I mentioned that since I'd been in

14  town, I'd been unable to get ahold of Cramblit and demanded that Cramblit be called on the

15  phone for authorization, or he could do a signature remotely. I continued to protest against the

16  violation of my right to use the public space. I offered to pay a fee and filled out the application,

17  checking the "Assemblage" box to rent the lobby starting at 3:15 P.M. on March 29, 2022. I left

18  the ending time blank. I updated my team and my invite for the constitutional rights class that I

19  had planned with the new location, expecting that we would be allowed to use the space without

20  our rights being violated, and that Cramblit would do the right thing and authorize the request.

21      66. At 3:16 P.M. I saw a sign erected by the City of Ironton in the City Hall that said that

22  "ANDERSON & ANDERSON, LAW FIRM" was a proud supporter of the IPD. Ironton

23  Prosecutor Brigham Anderson ("Anderson") is a member of this law firm, which clearly has

15

1    contributed financially to the IPD, creating a conflict of interest.

2          67. At 3:21 P.M. I exited the City Hall to ask someone to lock up my gun, after witnessing

3    a no weapons sign in the City Hall. I re-entered the building about a minute later, through an

4    unlocked door.

5          68. While waiting for people to attend the constitutional rights class, I continued to ask for

6    attendees to remain peaceful and non-violent.

7          69. At 4:20 P.M. an unknown person with unknown status and unknown authority said that

8    "We have a policy here, that if you want to rent the building, it has to be approved [with] 24

9    hours' notice." I continued to assert my rights to have equal access to the space. I had now heard

10   different fabrications that continued to escalate the denial of my rights. First, that Cramblit's

11   secretary could approve the usage of the space. Then, Cramblit himself had to authorize the

12   space. Then, Cramblit had conveniently left early, unable to authorize the use of the space. After

13   I demanded that they get Cramblit to remotely authorize the space, this unknown person

14   approached me and would have me believe that even after they got ahold of Cramblit for

15   authorization, that Cramblit had suddenly fabricated a new "policy" requiring 24 hours' notice.

16   A citizen, in a position to know, confirmed with me that the lobby was regularly used for

17   weddings and birthday parties.

18         70. At 4:58 P.M. the lights were turned off in the lobby, to further interfere with my right to

19   use the lobby. The public facing lobby door was still unlocked and the building was still open to

20   the public, with members of the public besides me still in the building lobby.

21         71. At 4:59 P.M. Pam Wagner entered the back door from the IPD station, followed by five

22   IPD officers. I started filming them.

23         72. At 4:59 P.M. and 32 seconds, Wagner raised her right hand and said, "Jose M.

16

1  contributed financially to the IPD, creating a conflict of interest.

2      67. At 3:21 P.M. I exited the City Hall to ask someone to lock up my gun, after witnessing

3  a no weapons sign in the City Hall. I re-entered the building about a minute later, through an

4  unlocked door.

5      68. While waiting for people to attend the constitutional rights class, I continued to ask for

6  attendees to remain peaceful and non-violent.

7      69. At 4:20 P.M. an unknown person with unknown status and unknown authority said that

8  "We have a policy here, that if you want to rent the building, it has to be approved [with] 24

9  hours' notice." I continued to assert my rights to have equal access to the space. I had now heard

10  different fabrications that continued to escalate the denial of my rights. First, that Cramblit's

11  secretary could approve the usage of the space. Then, Cramblit himself had to authorize the

12  space. Then, Cramblit had conveniently left early, unable to authorize the use of the space. After

13  I demanded that they get Cramblit to remotely authorize the space, this unknown person

14  approached me and would have me believe that even after they got ahold of Cramblit for

15  authorization, that Cramblit had suddenly fabricated a new "policy" requiring 24 hours' notice.

16  A citizen, in a position to know, confirmed with me that the lobby was regularly used for

17  weddings and birthday parties.

18      70. At 4:58 P.M. the lights were turned off in the lobby, to further interfere with my right to

19  use the lobby. The public facing lobby door was still unlocked and the building was still open to

20  the public, with members of the public besides me still in the building lobby.

21      71. At 4:59 P.M. Pam Wagner entered the back door from the IPD station, followed by five

22  IPD officers. I started filming them.

23      72. At 4:59 P.M. and 32 seconds, Wagner raised her right hand and said, "Jose M.

16

1  DeCastro, cease and desist your disorderly conduct, or you will be arrested." I was engaging in

2  no disorderly conduct, but just standing there holding a camera. At the time, the public facing

3  lobby door was still unlocked and the building was still open to the public, with members of the

4  public besides me still in the building lobby.

5       73. I said, "I'm more than willing…" but Wagner yelled over me. Wagner yelled "Jose M.

6  DeCastro", and she paused. I said "I hear you. I hear you ma'am." Wagner then continued with

7  "Vacate right now or you will be arrested." It was 4:59 P.M. and 44 seconds when she finished

8  saying this. I did not feel free to leave, due to her commands and hand gestures, which were an

9  open hand indicating stop followed then by a raised finger. I was not afforded an opportunity to

10  leave the building or an opportunity to ask if I was being threatened with trespass.

11       74. I said, "I'm more than willing to go with you." Wagner then started repeating herself,

12  "Jose M. DeC…", before she realized what I said. Wagner then said, "You will?", and then

13  motioned me toward her with her fingers. She said, "Let's go!".

14       75. I said, "If you're going to arrest me?". They did confirm that they were going to arrest

15  me by not denying it and Wagner then waved me toward the back door to the IPD. Additionally,

16  the other officers kept approaching me. I then said in a calm voice, to indicate my compliance,

17  "If I'm under arrest, I'll go with you." It was 4:49 P.M. and 51 seconds when I finished saying

18  this. Immediately after I said this, McKnight said, "Put your hands behind your back. You're

19  under arrest." It was 4:49 P.M. and 53 seconds when he finished saying that. I started protesting

20  for specific medical needs, that I couldn't be handcuffed behind my back while also continuing

21  to voice my compliance in a calm voice, and the officers all escorted me calmly through the back

22  door of the lobby into the IPD station. Spoljaric offered to handcuff me in the front. At the time,

23  the public facing lobby door was still unlocked and the building was still open to the public, with

17

1   DeCastro, cease and desist your disorderly conduct, or you will be arrested." I was engaging in

2   no disorderly conduct, but just standing there holding a camera. At the time, the public facing

3   lobby door was still unlocked and the building was still open to the public, with members of the

4   public besides me still in the building lobby.

5       73. I said, "I'm more than willing…" but Wagner yelled over me. Wagner yelled "Jose M.

6   DeCastro", and she paused. I said "I hear you. I hear you ma'am." Wagner then continued with

7   "Vacate right now or you will be arrested." It was 4:59 P.M. and 44 seconds when she finished

8   saying this. I did not feel free to leave, due to her commands and hand gestures, which were an

9   open hand indicating stop followed then by a raised finger. I was not afforded an opportunity to

10  leave the building or an opportunity to ask if I was being threatened with trespass.

11      74. I said, "I'm more than willing to go with you." Wagner then started repeating herself,

12  "Jose M. DeC…", before she realized what I said. Wagner then said, "You will?", and then

13  motioned me toward her with her fingers. She said, "Let's go!".

14      75. I said, "If you're going to arrest me?". They did confirm that they were going to arrest

15  me by not denying it and Wagner then waved me toward the back door to the IPD. Additionally,

16  the other officers kept approaching me. I then said in a calm voice, to indicate my compliance,

17  "If I'm under arrest, I'll go with you." It was 4:49 P.M. and 51 seconds when I finished saying

18  this. Immediately after I said this, McKnight said, "Put your hands behind your back. You're

19  under arrest." It was 4:49 P.M. and 53 seconds when he finished saying that. I started protesting

20  for specific medical needs, that I couldn't be handcuffed behind my back while also continuing

21  to voice my compliance in a calm voice, and the officers all escorted me calmly through the back

22  door of the lobby into the IPD station. Spoljaric offered to handcuff me in the front. At the time,

23  the public facing lobby door was still unlocked and the building was still open to the public, with

17

1   members of the public besides me still in the building lobby. I did not wish to be arrested. The

2   officers did not have and did not present a warrant for my arrest.

3       76. As soon as I was in the IPD, out of the view of the public, I was immediately, and

4   unnecessarily grabbed, with unnecessary force, by McKnight who tried to handcuff me in the

5   back. Spoljaric advocated for handcuffing me in the front, and once McKnight let go of me after

6   I pleaded multiple times, I was handcuffed in the front. The officers took my cell phone, which

7   was an iPhone 12 Max Pro.

8       77. There were other members of the public in the building. None of them were arrested,

9   even though Wagner had to step around one of them to confront me. I had no intention of

10   trespassing, disorderly conduct, or resisting arrest. I did not engage in disorderly conduct, I did

11   not resist arrest, and I did not trespass. I did not witness any owner or duly authorized person ask

12   the IPD to trespass me from the building. My invitation to the building was never revoked as a

13   result of the building being closed to the public. I was threatened that I would be arrested if I

14   didn't stop my disorderly conduct, but I was not engaging in disorderly conduct.

15       78. (My original complaint and first amended complaint used the time on the City Hall's

16   wall clock, seen in my YouTube video of the arrest, to determine the time of events. This

17   complaint uses the more accurate time recorded by YouTube for the arrest video, which was

18   streamed to YouTube in real time as it was recorded. Since 2019, YouTube's meta data servers

19   are hosted on Google's Spanner technology, which has some of the world's most accurate

20   clocks, with an atomic clock assigned to each cluster. The timestamps on YouTube meta data are

21   expected to be accurate to within a few nanoseconds. YouTube's timestamps are more accurate

22   than the wall clock at the City Hall, which apparently was at least a few minutes fast, and which

23   the defendants already knew about, but have failed to provide any exculpatory evidence in the

1   members of the public besides me still in the building lobby. I did not wish to be arrested. The

2   officers did not have and did not present a warrant for my arrest.

3       76. As soon as I was in the IPD, out of the view of the public, I was immediately, and

4   unnecessarily grabbed, with unnecessary force, by McKnight who tried to handcuff me in the

5   back. Spoljaric advocated for handcuffing me in the front, and once McKnight let go of me after

6   I pleaded multiple times, I was handcuffed in the front. The officers took my cell phone, which

7   was an iPhone 12 Max Pro.

8       77. There were other members of the public in the building. None of them were arrested,

9   even though Wagner had to step around one of them to confront me. I had no intention of

10   trespassing, disorderly conduct, or resisting arrest. I did not engage in disorderly conduct, I did

11   not resist arrest, and I did not trespass. I did not witness any owner or duly authorized person ask

12   the IPD to trespass me from the building. My invitation to the building was never revoked as a

13   result of the building being closed to the public. I was threatened that I would be arrested if I

14   didn't stop my disorderly conduct, but I was not engaging in disorderly conduct.

15       78. (My original complaint and first amended complaint used the time on the City Hall's

16   wall clock, seen in my YouTube video of the arrest, to determine the time of events. This

17   complaint uses the more accurate time recorded by YouTube for the arrest video, which was

18   streamed to YouTube in real time as it was recorded. Since 2019, YouTube's meta data servers

19   are hosted on Google's Spanner technology, which has some of the world's most accurate

20   clocks, with an atomic clock assigned to each cluster. The timestamps on YouTube meta data are

21   expected to be accurate to within a few nanoseconds. YouTube's timestamps are more accurate

22   than the wall clock at the City Hall, which apparently was at least a few minutes fast, and which

23   the defendants already knew about, but have failed to provide any exculpatory evidence in the

1  criminal case as required.)

2  79. **March 29, 2022 Abuse of power by Jailer.** At the Lawrence County Jail, they had a

3  man follow me with a camcorder. After exiting the full body scanner, I was asked my name and

4  date of birth, which I provided. I was asked for my social security number. I told the requestor

5  that he didn't need it. I asked one of the officers there that I only know as Steve, "Do you know

6  that that's not right to ask my social security number?" Steve said, "Yes sir". Other officers said

7  that they can ask me anything, and that I cannot answer. Although the Jail sent me some video,

8  the video of John Chapman's abuse of power was suspiciously missing.

9  80. At one time, while in a room with John Chapman, he asked me to provide my social

10  security number. He said that if I refused that the jail would list me as a "John Doe" and that I

11  would be incarcerated for up to three months until the FBI came back with confirmation of my

12  identity. Besides the threats, Chapman delayed my processing into the jail while I refused to

13  provide my social security number. After two hours, Chapman came back to me and threatened

14  to charge me with felony obstruction if I didn't provide my social security number. Chapman did

15  not indicate a statutory authority for mandatory access to my social security number and he did

16  not say what it would be used for. Chapman had my driver license number which works just as

17  well for verifying someone's identity in government databases. Under continued threats to my

18  civil rights and further denial of my civil rights, I provided my social security number. The

19  guards showed me a computer screen listing over 20 inmates with social security numbers that

20  they had also obtained through the same methods.

21  81. When released from Jail on bail, my cell phone was not returned to me. I called the IPD

22  later demanding the return of my cell phone. I then had to rent a cell phone. (I later had to

23  purchase a replacement cell phone because it would be a while before the IPD returned my cell

19

1  criminal case as required.)

2  79. **March 29, 2022 Abuse of power by Jailer.** At the Lawrence County Jail, they had a

3  man follow me with a camcorder. After exiting the full body scanner, I was asked my name and

4  date of birth, which I provided. I was asked for my social security number. I told the requestor

5  that he didn't need it. I asked one of the officers there that I only know as Steve, "Do you know

6  that that's not right to ask my social security number?" Steve said, "Yes sir". Other officers said

7  that they can ask me anything, and that I cannot answer. Although the Jail sent me some video,

8  the video of John Chapman's abuse of power was suspiciously missing.

9  80. At one time, while in a room with John Chapman, he asked me to provide my social

10  security number. He said that if I refused that the jail would list me as a "John Doe" and that I

11  would be incarcerated for up to three months until the FBI came back with confirmation of my

12  identity. Besides the threats, Chapman delayed my processing into the jail while I refused to

13  provide my social security number. After two hours, Chapman came back to me and threatened

14  to charge me with felony obstruction if I didn't provide my social security number. Chapman did

15  not indicate a statutory authority for mandatory access to my social security number and he did

16  not say what it would be used for. Chapman had my driver license number which works just as

17  well for verifying someone's identity in government databases. Under continued threats to my

18  civil rights and further denial of my civil rights, I provided my social security number. The

19  guards showed me a computer screen listing over 20 inmates with social security numbers that

20  they had also obtained through the same methods.

21  81. When released from Jail on bail, my cell phone was not returned to me. I called the IPD

22  later demanding the return of my cell phone. I then had to rent a cell phone. (I later had to

23  purchase a replacement cell phone because it would be a while before the IPD returned my cell

19

1   phone and because they returned it in an unusable state).

2   82. **March 30, 2022.** The IPD released false police reports to the press and to prosecutors

3   accusing me of a crime when none was committed. This defamation and abuse of process

4   harmed my reputation when the press reported on the false information and I had to initiate a

5   costly criminal defense against false charges of Resisting Arrest (O.R.C. 2921.33), Criminal

6   Trespass (O.R.C. 2911.21), and Disorderly Conduct (2917.11), brought against me by Anderson.

7   83. I called the IPD demanding the return of my cell phone.

8   84. **March 31, 2022.** I called the IPD demanding the return of my cell phone.

9   85. **April 1, 2022.** IPD's search warrant application for my cell phone was denied by

10  Ironton Municipal Court. In the same denial, Waldo ordered the IPD to return my cell phone to

11  me "forthwith". They did not do that.

12  86. **April 4, 2022.** I filed a complaint for replevin with the Ironton Municipal Court for the

13  return of my cell phone.

14  87. **April 5, 2022.** I published an interview with a woman who was groomed as a middle

15  schooler by Jonathan Spoljaric and had a sexual relationship with him, while he was married and

16  while she was a minor. Spoljaric was also having a sexual relationship with another high

17  schooler at the same time. IPD Officer Adam Koch was also having a sexual relationship with a

18  high schooler. Koch had already resigned prior to my interview. I reported this to the FBI.

19  88, I delivered a demand letter for the return of my cell phone to the IPD.

20  89. **April 10, 2022.** Samantha, who identified herself as "Samantha at the Clerk of Courts"

21  allegedly returned a call to a number from where a caller had allegedly said something obscene.

22  Samantha's phone call was to Darin Haberkorn. Haberkorn returned Samantha's call at which

23  time Samantha told Haberkorn that Plaintiff had spoofed Haberkorn's phone number and had

1   phone and because they returned it in an unusable state).

2      82. **March 30, 2022.** The IPD released false police reports to the press and to prosecutors

3   accusing me of a crime when none was committed. This defamation and abuse of process

4   harmed my reputation when the press reported on the false information and I had to initiate a

5   costly criminal defense against false charges of Resisting Arrest (O.R.C. 2921.33), Criminal

6   Trespass (O.R.C. 2911.21), and Disorderly Conduct (2917.11), brought against me by Anderson.

7      83. I called the IPD demanding the return of my cell phone.

8      84. **March 31, 2022.** I called the IPD demanding the return of my cell phone.

9      85. **April 1, 2022.** IPD's search warrant application for my cell phone was denied by

10  Ironton Municipal Court. In the same denial, Waldo ordered the IPD to return my cell phone to

11  me "forthwith". They did not do that.

12     86. **April 4, 2022.** I filed a complaint for replevin with the Ironton Municipal Court for the

13  return of my cell phone.

14     87. **April 5, 2022.** I published an interview with a woman who was groomed as a middle

15  schooler by Jonathan Spoljaric and had a sexual relationship with him, while he was married and

16  while she was a minor. Spoljaric was also having a sexual relationship with another high

17  schooler at the same time. IPD Officer Adam Koch was also having a sexual relationship with a

18  high schooler. Koch had already resigned prior to my interview. I reported this to the FBI.

19     88, I delivered a demand letter for the return of my cell phone to the IPD.

20     89. **April 10, 2022.** Samantha, who identified herself as "Samantha at the Clerk of Courts"

21  allegedly returned a call to a number from where a caller had allegedly said something obscene.

22  Samantha's phone call was to Darin Haberkorn. Haberkorn returned Samantha's call at which

23  time Samantha told Haberkorn that Plaintiff had spoofed Haberkorn's phone number and had

1    used it to make obscene calls to the "local court offices", and that Plaintiff had also spoofed other

2    numbers to do the same thing in order to make "really vulgar remarks". My reputation was

3    harmed by this untrue defamatory claim of multiple criminal acts committed by me. Samantha

4    should have known by the alleged obscene call, that it wasn't my voice, if any obscene call had

5    even actually been made. Samantha was responsible for the untrue statements of fact that she

6    deliberately and maliciously made against my character when she used my name and asserted as

7    fact to a third party that I had committed several crimes.

8        90. **April 13, 2022.** I filed the instant case.

9        91. **April 28, 2022.** The prosecuting attorney for my trespass case asked the court that I not

10   be allowed to come within 100 feet of or in any way confront Pam Wagner, Robert Fouch, Brad

11   Spoljaric, Matt McGraw, Shannon Litton, Samuel Cramblit, Lisa Adkins, Terry Smith, Chance

12   Blankenship, Brandon Blankenship, Attorney Warren Morford, and Evan McKnight. Judge

13   Waldo granted the request, chilling my civil rights.

14       92. Terry Smith is the assistant of Cramblit, whose offices I visited regularly to try to get an

15   interview with him. I had only ever been polite when dealing with Smith. As the mayor is the

16   executive of the City of Ironton, Ohio, this restraining order deliberately and maliciously chilled

17   many of my rights to address the government regarding violations of civil rights committed by

18   the IPD.

19       93. Wagner of the IPD returned parts of my cell phone to me after a replevin hearing and

20   after the replevin action was dismissed. The phone showed signs of being searched and or cloned

21   in that it was missing the following items: 1) sim card, 2) sim card tray. Additionally, the hole

22   where the sim card tray goes into the phone was damaged. I asked about the damage and missing

23   parts, but Wagner simply said that she did not know what had happened to it. I was not afforded

21

1  used it to make obscene calls to the "local court offices", and that Plaintiff had also spoofed other

2  numbers to do the same thing in order to make "really vulgar remarks". My reputation was

3  harmed by this untrue defamatory claim of multiple criminal acts committed by me. Samantha

4  should have known by the alleged obscene call, that it wasn't my voice, if any obscene call had

5  even actually been made. Samantha was responsible for the untrue statements of fact that she

6  deliberately and maliciously made against my character when she used my name and asserted as

7  fact to a third party that I had committed several crimes.

8      90. **April 13, 2022.** I filed the instant case.

9      91. **April 28, 2022.** The prosecuting attorney for my trespass case asked the court that I not

10  be allowed to come within 100 feet of or in any way confront Pam Wagner, Robert Fouch, Brad

11  Spoljaric, Matt McGraw, Shannon Litton, Samuel Cramblit, Lisa Adkins, Terry Smith, Chance

12  Blankenship, Brandon Blankenship, Attorney Warren Morford, and Evan McKnight. Judge

13  Waldo granted the request, chilling my civil rights.

14      92. Terry Smith is the assistant of Cramblit, whose offices I visited regularly to try to get an

15  interview with him. I had only ever been polite when dealing with Smith. As the mayor is the

16  executive of the City of Ironton, Ohio, this restraining order deliberately and maliciously chilled

17  many of my rights to address the government regarding violations of civil rights committed by

18  the IPD.

19      93. Wagner of the IPD returned parts of my cell phone to me after a replevin hearing and

20  after the replevin action was dismissed. The phone showed signs of being searched and or cloned

21  in that it was missing the following items: 1) sim card, 2) sim card tray. Additionally, the hole

22  where the sim card tray goes into the phone was damaged. I asked about the damage and missing

23  parts, but Wagner simply said that she did not know what had happened to it. I was not afforded

21

1  an opportunity before the replevin action was dismissed to address the damage or have it

2  corrected. Wagner simply verbally dismissed my damage complaint.

3       94. **April 30, 2022.** I publicly announced that I was headed to the sheriff's auto auction. As

4  a result, four IPD officers were dispatched by Wagner to the auction and arrived ahead of me.

5  While at the auction, I heard from two other citizens who complained about their vehicles being

6  seized. One person was required to pay an impound fee to recover their own stolen car. I also

7  heard from two other people who had their cash illegally stolen when arrested. One of them had

8  been arrested for not wearing a seatbelt. A man I interviewed said that Gue unnecessarily closed

9  the patrol car door on his legs after Gue unnecessarily tackled him to the ground for an

10  obstruction arrest.

11       95. I would later found out that IPD officers tried calling the parole officer to get my bail

12  revoked while they were at the auction.

13       96. **May 11, 2022.** Ironton Prosecutor Anderson tried to revoke my bond for violating the

14  conditions of my bond for "coming into contact with witnesses" at a city council meeting on

15  April 28, 2022. This was the same day that the restriction was put in place, and before I was

16  aware of it. Additionally, Wagner called that witness to the city council meeting that I was

17  attending, and that witness arrived after me. Additionally, the prosecutor cited the above

18  mentioned April 30, 2022 event, where the police were dispatched ahead of me to the auction,

19  which they had never attended before.

20       97. Anderson is a known financial support of the IPD, creating a conflict of interest. As a

21  result of the close relationship with the IPD, Anderson is hesitant to challenge or investigate

22  potential misconduct by the IPD. Anderson is also exposed to undue pressure or influence to

23  pursue certain cases or charges submitted by the IPD. This causes a conflict of interest when

1   an opportunity before the replevin action was dismissed to address the damage or have it

2   corrected. Wagner simply verbally dismissed my damage complaint.

3       94. **April 30, 2022.** I publicly announced that I was headed to the sheriff's auto auction. As

4   a result, four IPD officers were dispatched by Wagner to the auction and arrived ahead of me.

5   While at the auction, I heard from two other citizens who complained about their vehicles being

6   seized. One person was required to pay an impound fee to recover their own stolen car. I also

7   heard from two other people who had their cash illegally stolen when arrested. One of them had

8   been arrested for not wearing a seatbelt. A man I interviewed said that Gue unnecessarily closed

9   the patrol car door on his legs after Gue unnecessarily tackled him to the ground for an

10  obstruction arrest.

11      95. I would later found out that IPD officers tried calling the parole officer to get my bail

12  revoked while they were at the auction.

13      96. **May 11, 2022.** Ironton Prosecutor Anderson tried to revoke my bond for violating the

14  conditions of my bond for "coming into contact with witnesses" at a city council meeting on

15  April 28, 2022. This was the same day that the restriction was put in place, and before I was

16  aware of it. Additionally, Wagner called that witness to the city council meeting that I was

17  attending, and that witness arrived after me. Additionally, the prosecutor cited the above

18  mentioned April 30, 2022 event, where the police were dispatched ahead of me to the auction,

19  which they had never attended before.

20      97. Anderson is a known financial support of the IPD, creating a conflict of interest. As a

21  result of the close relationship with the IPD, Anderson is hesitant to challenge or investigate

22  potential misconduct by the IPD. Anderson is also exposed to undue pressure or influence to

23  pursue certain cases or charges submitted by the IPD. This causes a conflict of interest when

1  holding police officers accountable for misconduct. At a minimum, this at least provides the

2  perception of a conflict of interest.

3      98. **June 4, 2022.** Sheriff's Deputy Jonathan Spoljaric resigns after an Ironton Tribune

4  article about him being sued by Kent Freeman for the abuse captured in the video that I

5  published on March 29, 2022.

6      99. **July 27, 2022.** IPD Officer Brad Spoljaric was arrested for domestic violence, drug

7  trafficking, and tampering with evidence. Spoljaric was residing with McKnight when Spoljaric

8  was arrested. The drugs were found in McKnight's home. Twenty grams of meth, and eight

9  grams of fentanyl. Waldo asked Spoljaric if he would like to be found indigent to qualify for a

10  free public defender, instead of having him apply and qualify under actual financial grounds.

11  (Spoljaric would later plead guilty.)

12      100. **August 14, 2022.** Beth Rist, the first female police officer in Ironton, released a

13  YouTube video about 17 women who were coerced to have sex with IPD officers to get out of

14  traffic tickets. Since then, she has published a book on the corruption in Ironton. "Rist vs

15  Ironton... The Real Story". Rist sued the department for sexual harassment in 2001 and won in

16  arbitration but was fired in retaliation. Although she'd won the binding arbitration with the union,

17  the city had a judge overrule it. After she filed the suit, a cat, that had been cut open, was thrown

18  into her backyard. When she went to work after that, William Garland, who was now the captain

19  told Rist. "I smell dead pussy." After she left the department, Rist would be working at her new

20  job, and police officers would drive by, honk their horns, and laugh at her. Although she was

21  hated in the police department, Rist ran for city council and won.

22      101. **August 22, 2022.** Ironton Mayor Sam Cramblit was charged with operating a vehicle

23  while impaired by the Ohio State Highway Patrol. At the traffic stop, Cramblit said, "This is off

1  holding police officers accountable for misconduct. At a minimum, this at least provides the

2  perception of a conflict of interest.

3        98. **June 4, 2022.** Sheriff's Deputy Jonathan Spoljaric resigns after an Ironton Tribune

4  article about him being sued by Kent Freeman for the abuse captured in the video that I

5  published on March 29, 2022.

6        99. **July 27, 2022.** IPD Officer Brad Spoljaric was arrested for domestic violence, drug

7  trafficking, and tampering with evidence. Spoljaric was residing with McKnight when Spoljaric

8  was arrested. The drugs were found in McKnight's home. Twenty grams of meth, and eight

9  grams of fentanyl. Waldo asked Spoljaric if he would like to be found indigent to qualify for a

10 free public defender, instead of having him apply and qualify under actual financial grounds.

11 (Spoljaric would later plead guilty.)

12       100. **August 14, 2022.** Beth Rist, the first female police officer in Ironton, released a

13 YouTube video about 17 women who were coerced to have sex with IPD officers to get out of

14 traffic tickets. Since then, she has published a book on the corruption in Ironton. "Rist vs

15 Ironton... The Real Story". Rist sued the department for sexual harassment in 2001 and won in

16 arbitration but was fired in retaliation. Although she'd won the binding arbitration with the union,

17 the city had a judge overrule it. After she filed the suit, a cat, that had been cut open, was thrown

18 into her backyard. When she went to work after that, William Garland, who was now the captain

19 told Rist. "I smell dead pussy." After she left the department, Rist would be working at her new

20 job, and police officers would drive by, honk their horns, and laugh at her. Although she was

21 hated in the police department, Rist ran for city council and won.

22       101. **August 22, 2022.** Ironton Mayor Sam Cramblit was charged with operating a vehicle

23 while impaired by the Ohio State Highway Patrol. At the traffic stop, Cramblit said, "This is off

1   the record. I'm the mayor here in Ironton, I'm just wondering what you guys are doing in town."

2   He wasn't used to having anyone but his local corrupt police force in his town, but he still wasn't

3   taken to jail, but released at the scene to a sober driver. Cramblit's attorney said that he was

4   disappointed that anyone was pursuing the charges. (The previous Mayor, Rich Blankenship

5   pleaded guilty to a DUI in 2012.)

6       102. **November 13, 2022.** IPD Officer Matthew McGraw died suspiciously at his own

7   home.

8       103. **January 31, 2023.** Pam Wagner retires from the IPD, to "Play with my grand

9   babies!".

10      104. **November 22, 2023.** I was pulled over for a traffic infraction in Las Vegas, Nevada

11  by the Nevada Highway Patrol. The officers read in their database a warrant for contempt of

12  court out of Ohio "with a flag for violent tendencies", placed there by the IPD, the City of

13  Ironton, and individual IPD officer defendants in this action. As a direct result of the "violent

14  tendencies" defamatory comment in the database placed there by the above defendants, the

15  Nevada Highway Patrol said that I must be handcuffed while detained. I was aggressively

16  detained, battered, and painfully handcuffed.

17                                   **COUNT 1**

18      105. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

19  the allegations of said paragraphs as though expressly set forth at length at this point.

20      106. Arrest without probable cause or a warrant under the Ohio Constitution and Bill of

21  Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state

22  statute, and common law, against Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan

23  McKnight, Robert Fouch, and Does 1 to 7.

24

1   the record. I'm the mayor here in Ironton, I'm just wondering what you guys are doing in town."

2   He wasn't used to having anyone but his local corrupt police force in his town, but he still wasn't

3   taken to jail, but released at the scene to a sober driver. Cramblit's attorney said that he was

4   disappointed that anyone was pursuing the charges. (The previous Mayor, Rich Blankenship

5   pleaded guilty to a DUI in 2012.)

6       102. **November 13, 2022.** IPD Officer Matthew McGraw died suspiciously at his own

7   home.

8       103. **January 31, 2023.** Pam Wagner retires from the IPD, to "Play with my grand

9   babies!".

10      104. **November 22, 2023.** I was pulled over for a traffic infraction in Las Vegas, Nevada

11  by the Nevada Highway Patrol. The officers read in their database a warrant for contempt of

12  court out of Ohio "with a flag for violent tendencies", placed there by the IPD, the City of

13  Ironton, and individual IPD officer defendants in this action. As a direct result of the "violent

14  tendencies" defamatory comment in the database placed there by the above defendants, the

15  Nevada Highway Patrol said that I must be handcuffed while detained. I was aggressively

16  detained, battered, and painfully handcuffed.

17                                    **COUNT 1**

18      105. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

19  the allegations of said paragraphs as though expressly set forth at length at this point.

20      106. Arrest without probable cause or a warrant under the Ohio Constitution and Bill of

21  Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state

22  statute, and common law, against Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan

23  McKnight, Robert Fouch, and Does 1 to 7.

1    107. The factual allegations show that I was intentionally deprived of my liberty, that I was

2    aware of my confinement, I did not consent to the confinement, and the officers lacked privilege

3    or a warrant to confine me. I was not trespassing as the building was still open to the public. I

4    was not engaging in disorderly conduct in that I was simply standing there exercising my First

5    Amendment rights by filming the police in a traditional public forum. I was speaking in a calm

6    voice and encouraged my constitutional class members to be peaceful and non-violent. Finally, I

7    did nothing to resist arrest, and in fact continued to voice my compliance. Defendants only

8    needed to give me clear verbal commands and did not need to touch me for my compliance.

9    Further, even if I'm found guilty of trespass, it's only as a direct and proximate result of being

10   denied equal access to the City Hall, and due to trespass statutes being enforced or codified

11   contrary to the civil rights guaranteed by the United States Constitution.

12       108. I was harmed as a direct and proximate result by being deprived of my liberty for a

13   period of time, being unable to do what I wanted or go where I wanted.

14       109. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

15   conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

16   allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

17   and deter such conduct.

18                                      **COUNT 2**

19       110. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

20   the allegations of said paragraphs as though expressly set forth at length at this point.

21       111. Unreasonable search under the Ohio Constitution and Bill of Rights, the Nevada

22   Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

23   against Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McKnight, Robert Fouch, and

25

1    107. The factual allegations show that I was intentionally deprived of my liberty, that I was

2  aware of my confinement, I did not consent to the confinement, and the officers lacked privilege

3  or a warrant to confine me. I was not trespassing as the building was still open to the public. I

4  was not engaging in disorderly conduct in that I was simply standing there exercising my First

5  Amendment rights by filming the police in a traditional public forum. I was speaking in a calm

6  voice and encouraged my constitutional class members to be peaceful and non-violent. Finally, I

7  did nothing to resist arrest, and in fact continued to voice my compliance. Defendants only

8  needed to give me clear verbal commands and did not need to touch me for my compliance.

9  Further, even if I'm found guilty of trespass, it's only as a direct and proximate result of being

10  denied equal access to the City Hall, and due to trespass statutes being enforced or codified

11  contrary to the civil rights guaranteed by the United States Constitution.

12    108. I was harmed as a direct and proximate result by being deprived of my liberty for a

13  period of time, being unable to do what I wanted or go where I wanted.

14    109. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

15  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

16  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

17  and deter such conduct.

18                                              **COUNT 2**

19    110. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

20  the allegations of said paragraphs as though expressly set forth at length at this point.

21    111. Unreasonable search under the Ohio Constitution and Bill of Rights, the Nevada

22  Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

23  against Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McKnight, Robert Fouch, and

25

1    Does 1 to 7.

2         112. The factual allegations show that I was arrested without probable cause and without a

3    warrant, and so the subsequent search of my person, including pockets, wallet, and cell phone

4    was a violation. The totality of the circumstances further show that my cell phone was searched

5    illegally without a warrant, including the fact that the sim card tray had been removed, the sim

6    card had been taken out to be cloned, the sim card slot was damaged as if a cloning cable had

7    been forced into the hole, the fact that a search warrant was applied for, and the fact that my

8    phone was not returned to me until two weeks after the judge ordered it, and when it was

9    returned it was still missing critical parts that would further show that it had been searched and

10   or cloned.

11        113. I was harmed as a direct and proximate result by the violation of my privacy of the

12   contents of my person, by the negative psychological and emotional impact on my rights being

13   violated and the chilling effect that this had on the future exercise of my rights for fear of further

14   abuse.

15        114. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

16   conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

17   allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

18   and deter such conduct.

19                                            **COUNT 3**

20        115. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

21   the allegations of said paragraphs as though expressly set forth at length at this point.

22        116. Excessive force in the course of an arrest under the Ohio Constitution and Bill of

23   Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state

1  Does 1 to 7.

2      112. The factual allegations show that I was arrested without probable cause and without a

3  warrant, and so the subsequent search of my person, including pockets, wallet, and cell phone

4  was a violation. The totality of the circumstances further show that my cell phone was searched

5  illegally without a warrant, including the fact that the sim card tray had been removed, the sim

6  card had been taken out to be cloned, the sim card slot was damaged as if a cloning cable had

7  been forced into the hole, the fact that a search warrant was applied for, and the fact that my

8  phone was not returned to me until two weeks after the judge ordered it, and when it was

9  returned it was still missing critical parts that would further show that it had been searched and

10  or cloned.

11      113. I was harmed as a direct and proximate result by the violation of my privacy of the

12  contents of my person, by the negative psychological and emotional impact on my rights being

13  violated and the chilling effect that this had on the future exercise of my rights for fear of further

14  abuse.

15      114. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

16  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

17  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

18  and deter such conduct.

19                                **COUNT 3**

20      115. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

21  the allegations of said paragraphs as though expressly set forth at length at this point.

22      116. Excessive force in the course of an arrest under the Ohio Constitution and Bill of

23  Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state

1  statute, and common law, against Evan McKnight.

2        117. The factual allegations show that defendant Evan McKnight unnecessarily used force

3  against me while I was being arrested.

4        118. I was harmed as a direct and proximate result by feeling physical pain and discomfort,

5  negative psychological and emotional impact of being battered and the chilling effect that this

6  had on the future exercise of my rights for fear of further abuse.

7        119. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

8  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

9  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

10  and deter such conduct.

11                              **COUNT 4**

12        120. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

13  the allegations of said paragraphs as though expressly set forth at length at this point.

14        121. Defamation under the Ohio Constitution and Bill of Rights, the Nevada Constitution

15  and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law, against Pam

16  Wagner, Brad Spoljaric, Chance Blankenship, Evan McKnight, Robert Fouch, and Does 1 to 7.

17        122. The factual allegations show that Pam Wagner, Brad Spoljaric, Chance Blankenship,

18  Evan McKnight, Robert Fouch, and Does 1 to 7 did share false police reports with third parties,

19  including a note in national databases saying that I had "violent tendencies" and did make false

20  reports to third party media relating to the negative effect of the safety of children when I'm

21  present and about restaurants closing for safety reasons caused by me. The totality of the facts

22  further indicate that the defamation was done deliberately and maliciously and that the

23  defendants knew that the defamatory statements were about me and were asserted as the truth

27

1 | statute, and common law, against Evan McKnight.

2 |     117. The factual allegations show that defendant Evan McKnight unnecessarily used force

3 | against me while I was being arrested.

4 |     118. I was harmed as a direct and proximate result by feeling physical pain and discomfort,

5 | negative psychological and emotional impact of being battered and the chilling effect that this

6 | had on the future exercise of my rights for fear of further abuse.

7 |     119. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

8 | conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

9 | allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

10 | and deter such conduct.

11 | **COUNT 4**

12 |     120. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

13 | the allegations of said paragraphs as though expressly set forth at length at this point.

14 |     121. Defamation under the Ohio Constitution and Bill of Rights, the Nevada Constitution

15 | and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law, against Pam

16 | Wagner, Brad Spoljaric, Chance Blankenship, Evan McKnight, Robert Fouch, and Does 1 to 7.

17 |     122. The factual allegations show that Pam Wagner, Brad Spoljaric, Chance Blankenship,

18 | Evan McKnight, Robert Fouch, and Does 1 to 7 did share false police reports with third parties,

19 | including a note in national databases saying that I had "violent tendencies" and did make false

20 | reports to third party media relating to the negative effect of the safety of children when I'm

21 | present and about restaurants closing for safety reasons caused by me. The totality of the facts

22 | further indicate that the defamation was done deliberately and maliciously and that the

23 | defendants knew that the defamatory statements were about me and were asserted as the truth

1    even though they were false.

2         123. I was harmed as a direct and proximate result by this damaging of my reputation,

3    which directly resulted in 1) my being harassed by parents in Ironton; and 2) public rallies

4    protesting against my presence in Ironton; 3) being forcefully detained at a traffic stop. The

5    defamation also had a direct and proximate negative psychological and emotional impact on me.

6         124. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

7    conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

8    allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

9    and deter such conduct.

10                                      **COUNT 5**

11        125. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

12   the allegations of said paragraphs as though expressly set forth at length at this point.

13        126. Chilling of First Amendment under the Ohio Constitution and Bill of Rights, the

14   Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and

15   common law, against all defendants.

16        127. The totality of the circumstances in the factual allegations shows that corruption was

17   afoot in Ironton and that my investigative journalism was bringing the corruption to light. As a

18   result, the perpetrators and their supporters conspired and did take actions that were intended to

19   and did chill my First Amendment rights. Specifically, but not limited to, following me, tracking

20   my movements, defaming me, attempting to find pretextual reasons for my arrest, arresting me,

21   and trying to revoke my bail. This resulted in intimidation and direct restriction of my movement

22   and freedoms to petition the government, perform functions of the press, and to speech.

23        128. I was harmed as a direct and proximate result by having to refrain from exercising my

                                         28

1   even though they were false.

2       123. I was harmed as a direct and proximate result by this damaging of my reputation,

3   which directly resulted in 1) my being harassed by parents in Ironton; and 2) public rallies

4   protesting against my presence in Ironton; 3) being forcefully detained at a traffic stop. The

5   defamation also had a direct and proximate negative psychological and emotional impact on me.

6       124. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

7   conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

8   allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

9   and deter such conduct.

10   **COUNT 5**

11       125. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

12   the allegations of said paragraphs as though expressly set forth at length at this point.

13       126. Chilling of First Amendment under the Ohio Constitution and Bill of Rights, the

14   Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and

15   common law, against all defendants.

16       127. The totality of the circumstances in the factual allegations shows that corruption was

17   afoot in Ironton and that my investigative journalism was bringing the corruption to light. As a

18   result, the perpetrators and their supporters conspired and did take actions that were intended to

19   and did chill my First Amendment rights. Specifically, but not limited to, following me, tracking

20   my movements, defaming me, attempting to find pretextual reasons for my arrest, arresting me,

21   and trying to revoke my bail. This resulted in intimidation and direct restriction of my movement

22   and freedoms to petition the government, perform functions of the press, and to speech.

23       128. I was harmed as a direct and proximate result by having to refrain from exercising my

28

1  rights, the government suppressing dissent, and loss of public participation. I also experienced,

2  as a direct and proximate result, the negative psychological and emotional impact of the abuse

3  and the chilling effect that this had on the future exercise of my rights for fear of further abuse.

4       129. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

5  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

6  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

7  and deter such conduct.

8  **COUNT 6**

9       130. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

10  the allegations of said paragraphs as though expressly set forth at length at this point.

11       131. First Amendment retaliation under the Ohio Constitution and Bill of Rights, the

12  Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and

13  common law, against all defendants.

14       132. The facts show that while exercising my first amendment rights recording police

15  under freedom of speech and freedom of press and protesting against police misconduct, I did

16  not do or say anything that would have provided reasonable suspicion or probable cause for the

17  arrest, excessive use of force, and subsequent searches. The totality of the circumstances show

18  that the defendants were in fact motivated by one or more of the three factors enumerated above.

19  There were similarly situated individuals in the lobby that had not made their views known and

20  that were not filming the police, who were not arrested. The arrest did stop me from further

21  exercising my rights.

22       133. I was harmed as a direct and proximate result by having to refrain from exercising my

23  rights, the government suppressing dissent, and loss of public participation. I also experienced,

1   rights, the government suppressing dissent, and loss of public participation. I also experienced,

2   as a direct and proximate result, the negative psychological and emotional impact of the abuse

3   and the chilling effect that this had on the future exercise of my rights for fear of further abuse.

4        129. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

5   conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

6   allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

7   and deter such conduct.

8                                   **COUNT 6**

9        130. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

10  the allegations of said paragraphs as though expressly set forth at length at this point.

11       131. First Amendment retaliation under the Ohio Constitution and Bill of Rights, the

12  Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and

13  common law, against all defendants.

14       132. The facts show that while exercising my first amendment rights recording police

15  under freedom of speech and freedom of press and protesting against police misconduct, I did

16  not do or say anything that would have provided reasonable suspicion or probable cause for the

17  arrest, excessive use of force, and subsequent searches. The totality of the circumstances show

18  that the defendants were in fact motivated by one or more of the three factors enumerated above.

19  There were similarly situated individuals in the lobby that had not made their views known and

20  that were not filming the police, who were not arrested. The arrest did stop me from further

21  exercising my rights.

22       133. I was harmed as a direct and proximate result by having to refrain from exercising my

23  rights, the government suppressing dissent, and loss of public participation. I also experienced,

1    as a direct and proximate result, the negative psychological and emotional impact of being

2    battered and the chilling effect that this had on the future exercise of my rights for fear of further

3    abuse. I was harmed as a direct and proximate result by being deprived of my liberty for a period

4    of time, being unable to do what I wanted or go where I wanted.

5           134. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

6    conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

7    allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

8    and deter such conduct.

9                                      **COUNT 7**

10          135. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

11   the allegations of said paragraphs as though expressly set forth at length at this point.

12          136. Monell Policy and Supervisor Liability claim under the Ohio Constitution and Bill of

13   Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state

14   statute, and common law, against Pam Wagner, and Ironton.

15          137. The unconstitutional actions and/or omissions of Pam Wagner, Brad Spoljaric, Chance

16   Blankenship, Evan McKnight, Robert Fouch, and Does 1 to 7 were pursuant to the following

17   customs, policies, practices, and/or procedures of defendants Ironton and Wagner, and which

18   were directed, encouraged, allowed and/or ratified by policymaking officials with Wagner and

19   Ironton:

20          a. To carry out or tolerate unlawful arrests without probable cause;

21          b. To carry out or tolerate detentions and arrests based on citizens' exercise of

22          their First Amendment right to criticize and verbally protest officers' actions;

23          c. To use or tolerate excessive force;

30

1  as a direct and proximate result, the negative psychological and emotional impact of being

2  battered and the chilling effect that this had on the future exercise of my rights for fear of further

3  abuse. I was harmed as a direct and proximate result by being deprived of my liberty for a period

4  of time, being unable to do what I wanted or go where I wanted.

5      134. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

6  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

7  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

8  and deter such conduct.

9                                      **COUNT 7**

10     135. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

11  the allegations of said paragraphs as though expressly set forth at length at this point.

12     136. Monell Policy and Supervisor Liability claim under the Ohio Constitution and Bill of

13  Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state

14  statute, and common law, against Pam Wagner, and Ironton.

15     137. The unconstitutional actions and/or omissions of Pam Wagner, Brad Spoljaric, Chance

16  Blankenship, Evan McKnight, Robert Fouch, and Does 1 to 7 were pursuant to the following

17  customs, policies, practices, and/or procedures of defendants Ironton and Wagner, and which

18  were directed, encouraged, allowed and/or ratified by policymaking officials with Wagner and

19  Ironton:

20      a. To carry out or tolerate unlawful arrests without probable cause;

21      b. To carry out or tolerate detentions and arrests based on citizens' exercise of

22        their First Amendment right to criticize and verbally protest officers' actions;

23      c. To use or tolerate excessive force;

1      d. To carry out or tolerate unlawful searches of persons and properties;

2      e. To carry out or tolerate discriminatory and biased policing and/or racial

3      profiling;

4      f. To carry out or tolerate unlawful seizures of property;

5      g. To allow officers to file false police reports.

6      138. The totality of the circumstances of IPD's consistent abuse of citizens including

7  myself are indicative of the existence of a written or unwritten municipal policy and minimally a

8  longstanding practice. Additionally, Wagner has admitted to dispatching the IPD to intercept me

9  at the auction and at a city council meeting in order to chill my rights. Finally, the factual

10  allegations show that Wagner was present multiple times and witnessed in the behaviors by her

11  subordinates. Discovery will show further proof.

12      139. I was harmed as a direct and proximate result by violations a – g and those harms are

13  enumerated in the separate claims for each primary claim.

14      140. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

15  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

16  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

17  and deter such conduct.

18                **COUNT 8**

19      141. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

20  the allegations of said paragraphs as though expressly set forth at length at this point.

21      142. Monell Policy and Supervisor Liability claim under the Ohio Constitution and Bill of

22  Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state

23  statute, and common law, against Lawrence County and Does 9 to 10.

1    d. To carry out or tolerate unlawful searches of persons and properties;

2    e. To carry out or tolerate discriminatory and biased policing and/or racial

3    profiling;

4    f. To carry out or tolerate unlawful seizures of property;

5    g. To allow officers to file false police reports.

6    138. The totality of the circumstances of IPD's consistent abuse of citizens including

7    myself are indicative of the existence of a written or unwritten municipal policy and minimally a

8    longstanding practice. Additionally, Wagner has admitted to dispatching the IPD to intercept me

9    at the auction and at a city council meeting in order to chill my rights. Finally, the factual

10   allegations show that Wagner was present multiple times and witnessed in the behaviors by her

11   subordinates. Discovery will show further proof.

12   139. I was harmed as a direct and proximate result by violations a – g and those harms are

13   enumerated in the separate claims for each primary claim.

14   140. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

15   conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

16   allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

17   and deter such conduct.

18                                       **COUNT 8**

19   141. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

20   the allegations of said paragraphs as though expressly set forth at length at this point.

21   142. Monell Policy and Supervisor Liability claim under the Ohio Constitution and Bill of

22   Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state

23   statute, and common law, against Lawrence County and Does 9 to 10.

31

1    143. The unconstitutional actions and/or omissions of John Chapman and Does 9 to 10

2    were pursuant to the following customs, policies, practices, and/or procedures of defendants

3    Lawrence County and Does 9 to 10, and which were directed, encouraged, allowed and/or

4    ratified by policymaking officials with Lawrence County and Does 9 to 10:

5         a. Making mandatory the disclosure of social security numbers from inmates without

6    providing statutory authority and what the numbers will be used for;

7         b. Denying rights and benefits unless a social security number is provided;

8         c. Using position as a jailer to unnecessarily put fear of the loss of rights into inmates.

9         144. The totality of the circumstances of Lawrence County's consistent abuse of inmates

10   including myself are indicative of the existence of a written or unwritten municipal policy and

11   minimally a longstanding practice. Discovery will show further proof.

12        145. I was harmed as a direct and proximate result by violations a – c and those harms are

13   enumerated in the separate claims for each primary claim.

14        146. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

15   conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

16   allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

17   and deter such conduct.

18                                          **COUNT 9**

19        147. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

20   the allegations of said paragraphs as though expressly set forth at length at this point.

21        148. Monell Policy and Supervisor Liability claim under the Ohio Constitution and Bill of

22   Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state

23   statute, and common law, against Doe Government Entity and Doe # 8.

1     143. The unconstitutional actions and/or omissions of John Chapman and Does 9 to 10

2  were pursuant to the following customs, policies, practices, and/or procedures of defendants

3  Lawrence County and Does 9 to 10, and which were directed, encouraged, allowed and/or

4  ratified by policymaking officials with Lawrence County and Does 9 to 10:

5     a. Making mandatory the disclosure of social security numbers from inmates without

6  providing statutory authority and what the numbers will be used for;

7     b. Denying rights and benefits unless a social security number is provided;

8     c. Using position as a jailer to unnecessarily put fear of the loss of rights into inmates.

9     144. The totality of the circumstances of Lawrence County's consistent abuse of inmates

10  including myself are indicative of the existence of a written or unwritten municipal policy and

11  minimally a longstanding practice. Discovery will show further proof.

12     145. I was harmed as a direct and proximate result by violations a – c and those harms are

13  enumerated in the separate claims for each primary claim.

14     146. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

15  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

16  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

17  and deter such conduct.

18                          **COUNT 9**

19     147. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

20  the allegations of said paragraphs as though expressly set forth at length at this point.

21     148. Monell Policy and Supervisor Liability claim under the Ohio Constitution and Bill of

22  Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state

23  statute, and common law, against Doe Government Entity and Doe # 8.

1     149. The unconstitutional actions and/or omissions of Sarah were pursuant to the following

2  customs, policies, practices, and/or procedures of defendants Doe Government Entity and Doe #

3  8, and which were directed, encouraged, allowed and/or ratified by policymaking officials with

4  Doe Government Entity and Doe # 8:

5     a. Allowing and or authorizing employees to make defamatory phone calls to third parties

6  in retaliation for the exercise of First Amendment Rights including freedom of the press and

7  freedom of speech.

8     150. The totality of the circumstances of Doe Government Entity's consistent misconduct

9  including against myself are indicative of the existence of a written or unwritten municipal

10  policy and minimally a longstanding practice. Discovery will show further proof.

11     151. I was harmed as a direct and proximate result by violations and those harms are

12  enumerated in the separate claims for each primary claim.

13     152. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

14  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

15  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

16  and deter such conduct.

17                 **COUNT 10**

18     153. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

19  the allegations of said paragraphs as though expressly set forth at length at this point.

20     154. Selective enforcement and inequal police action under the Ohio Constitution and Bill

21  of Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state

22  statute, and common law, against Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan

23  McKnight, Robert Fouch, and Does 1 to 7.

1      149. The unconstitutional actions and/or omissions of Sarah were pursuant to the following

2  customs, policies, practices, and/or procedures of defendants Doe Government Entity and Doe #

3  8, and which were directed, encouraged, allowed and/or ratified by policymaking officials with

4  Doe Government Entity and Doe # 8:

5      a. Allowing and or authorizing employees to make defamatory phone calls to third parties

6  in retaliation for the exercise of First Amendment Rights including freedom of the press and

7  freedom of speech.

8      150. The totality of the circumstances of Doe Government Entity's consistent misconduct

9  including against myself are indicative of the existence of a written or unwritten municipal

10  policy and minimally a longstanding practice. Discovery will show further proof.

11      151. I was harmed as a direct and proximate result by violations and those harms are

12  enumerated in the separate claims for each primary claim.

13      152. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

14  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

15  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

16  and deter such conduct.

17                     **COUNT 10**

18      153. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

19  the allegations of said paragraphs as though expressly set forth at length at this point.

20      154. Selective enforcement and inequal police action under the Ohio Constitution and Bill

21  of Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state

22  statute, and common law, against Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan

23  McKnight, Robert Fouch, and Does 1 to 7.

1    155. The totality of the allegations shows that defendants selectively enforced laws against

2    people with criminal records, against people that expressed criticism towards law enforcement,

3    and against those publicizing information on Police misconduct. The allegations also show the

4    effect of the discrimination under the totality of the circumstances but also directly in that

5    Cramblit was released at the scene of his OVI without being taken to jail, and at the failure of

6    defendants to arrest other citizens that were in the Ironton City Hall when I was arrested.

7    156. I was harmed as a direct and proximate result by having to refrain from exercising my

8    rights, the government suppressing dissent, and loss of public participation. I also experienced,

9    as a direct and proximate result, the negative psychological and emotional impact of the abuse

10   and the chilling effect that this had on the future exercise of my rights for fear of further abuse.

11   157. I was further harmed, as a direct and proximate result, by the unlawful arrest,

12   excessive force, battery, unlawful search, and abuse of process and those harms are enumerated

13   under those primary claims.

14   158. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

15   conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

16   allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

17   and deter such conduct.

18   **COUNT 11**

19   159. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

20   the allegations of said paragraphs as though expressly set forth at length at this point.

21   160. Battery under the Ohio Constitution and Bill of Rights, the Nevada Constitution and

22   Bill of Rights, U.S. Constitution, federal statute, state statute, and common law, against Evan

23   McKnight.

1    155. The totality of the allegations shows that defendants selectively enforced laws against

2    people with criminal records, against people that expressed criticism towards law enforcement,

3    and against those publicizing information on Police misconduct. The allegations also show the

4    effect of the discrimination under the totality of the circumstances but also directly in that

5    Cramblit was released at the scene of his OVI without being taken to jail, and at the failure of

6    defendants to arrest other citizens that were in the Ironton City Hall when I was arrested.

7    156. I was harmed as a direct and proximate result by having to refrain from exercising my

8    rights, the government suppressing dissent, and loss of public participation. I also experienced,

9    as a direct and proximate result, the negative psychological and emotional impact of the abuse

10   and the chilling effect that this had on the future exercise of my rights for fear of further abuse.

11   157. I was further harmed, as a direct and proximate result, by the unlawful arrest,

12   excessive force, battery, unlawful search, and abuse of process and those harms are enumerated

13   under those primary claims.

14   158. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

15   conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

16   allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

17   and deter such conduct.

18                                **COUNT 11**

19   159. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

20   the allegations of said paragraphs as though expressly set forth at length at this point.

21   160. Battery under the Ohio Constitution and Bill of Rights, the Nevada Constitution and

22   Bill of Rights, U.S. Constitution, federal statute, state statute, and common law, against Evan

23   McKnight.

34

161. The factual allegations show that defendant intentionally, and without consent or legal justification, touched Plaintiff in a harmful and offensive manner.

162. I was harmed as a direct and proximate result by feeling physical pain and discomfort, negative psychological and emotional impact of being battered and the chilling effect that this had on the future exercise of my rights for fear of further abuse.

163. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish and deter such conduct.

## COUNT 12

164. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

165. Monell Failure to Train under the Ohio Constitution and Bill of Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law, against Doe Government Entity.

166. Defendant failed to properly screen, hire, train, instruct, monitor, supervise, evaluate, investigate, discipline and/or terminate defendants Sarah and Doe #8, with deliberate indifference to Plaintiff's constitutional rights in the following manner:

a. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning engaging in defamation in retaliation of those exercising their First Amendment rights;

b. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures within the government entity concerning the fear experienced by people

35

1        161. The factual allegations show that defendant intentionally, and without consent or legal

2    justification, touched Plaintiff in a harmful and offensive manner.

3        162. I was harmed as a direct and proximate result by feeling physical pain and discomfort,

4    negative psychological and emotional impact of being battered and the chilling effect that this

5    had on the future exercise of my rights for fear of further abuse.

6        163. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

7    conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

8    allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

9    and deter such conduct.

10                                    **COUNT 12**

11        164. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

12    the allegations of said paragraphs as though expressly set forth at length at this point.

13        165. Monell Failure to Train under the Ohio Constitution and Bill of Rights, the Nevada

14    Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

15    against Doe Government Entity.

16        166. Defendant failed to properly screen, hire, train, instruct, monitor, supervise, evaluate,

17    investigate, discipline and/or terminate defendants Sarah and Doe #8, with deliberate

18    indifference to Plaintiff's constitutional rights in the following manner:

19        a. To fail to institute, require, and enforce proper and adequate training, supervision,

20    policies, and procedures concerning engaging in defamation in retaliation of those exercising

21    their First Amendment rights;

22        b. To fail to institute, require, and enforce proper and adequate training, supervision,

23    policies, and procedures within the government entity concerning the fear experienced by people

                                            35

1   of different minorities (including cop watching activists) when interacting with government

2   employees in light of well documented, highly publicized, and disproportionate amount of

3   discrimination committed by government employees against said groups, and the tactics that

4   employees should employ in dealing with said groups in light of such fears (especially where, as

5   here, they have been explicitly made known to the employees);

6       c. To ignore and/or fail to properly investigate, supervise, discipline, and/or terminate

7   employees who have engaged in unlawful or unconstitutional activities.

8       167. The totality of the circumstances of Doe Government Entity's consistent misconduct

9   including against myself are indicative of a Monell failure to train liability. Discovery will show

10  further proof.

11      168. I was harmed as a direct and proximate result by violations and those harms are

12  enumerated in the separate claims for each primary claim.

13      169. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

14  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

15  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

16  and deter such conduct.

17                          **COUNT 13**

18      170. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

19  the allegations of said paragraphs as though expressly set forth at length at this point.

20      171. Invasion of privacy under the Ohio Constitution and Bill of Rights, the Nevada

21  Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

22  against Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McKnight, Robert Fouch, and

23  Does 1 to 7.

1  of different minorities (including cop watching activists) when interacting with government

2  employees in light of well documented, highly publicized, and disproportionate amount of

3  discrimination committed by government employees against said groups, and the tactics that

4  employees should employ in dealing with said groups in light of such fears (especially where, as

5  here, they have been explicitly made known to the employees);

6      c. To ignore and/or fail to properly investigate, supervise, discipline, and/or terminate

7  employees who have engaged in unlawful or unconstitutional activities.

8      167. The totality of the circumstances of Doe Government Entity's consistent misconduct

9  including against myself are indicative of a Monell failure to train liability. Discovery will show

10  further proof.

11      168. I was harmed as a direct and proximate result by violations and those harms are

12  enumerated in the separate claims for each primary claim.

13      169. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

14  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

15  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

16  and deter such conduct.

17                              **COUNT 13**

18      170. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

19  the allegations of said paragraphs as though expressly set forth at length at this point.

20      171. Invasion of privacy under the Ohio Constitution and Bill of Rights, the Nevada

21  Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

22  against Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McKnight, Robert Fouch, and

23  Does 1 to 7.

172. During the incident giving rise to this action, Plaintiff had a reasonable expectation of privacy in his personal affairs, including the contents of his personal belongings such as vehicles, pockets, wallets, cell phones and other electronic devices.

173. In doing the things herein alleged, defendants intentionally invaded and intruded into Plaintiff's personal and private affairs by searching his belongings without a warrant or other legal justification.

174. Defendants' invasion of Plaintiff's privacy would have been offensive to any reasonable person.

175. I was harmed as a direct and proximate result by the violation of my privacy of the contents of my person, by the negative psychological and emotional impact on my rights being violated and the chilling effect that this had on the future exercise of my rights for fear of further abuse.

176. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish and deter such conduct.

**COUNT 14**

177. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

178. Negligence under the Ohio Constitution and Bill of Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law, against all individual defendants.

179. The individual defendants owed Plaintiff a duty to use reasonable care in connection

172. During the incident giving rise to this action, Plaintiff had a reasonable expectation of privacy in his personal affairs, including the contents of his personal belongings such as vehicles, pockets, wallets, cell phones and other electronic devices.

173. In doing the things herein alleged, defendants intentionally invaded and intruded into Plaintiff's personal and private affairs by searching his belongings without a warrant or other legal justification.

174. Defendants' invasion of Plaintiff's privacy would have been offensive to any reasonable person.

175. I was harmed as a direct and proximate result by the violation of my privacy of the contents of my person, by the negative psychological and emotional impact on my rights being violated and the chilling effect that this had on the future exercise of my rights for fear of further abuse.

176. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish and deter such conduct.

**COUNT 14**

177. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

178. Negligence under the Ohio Constitution and Bill of Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law, against all individual defendants.

179. The individual defendants owed Plaintiff a duty to use reasonable care in connection

1   with the parties' interactions as described herein. In particular, said defendants had a duty to

2   carefully investigate any criminal activity, to use care to avoid subjecting Plaintiff to an illegal

3   detention, arrest, seizure, retaliation for exercise of free speech, free press, or petition for redress

4   of grievances, use of force, or deprivation of any of the other rights enumerated herein, and to

5   use reasonable care to avoid engaging in biased policing or racial and political affiliation

6   profiling.

7        180. In doing the things herein alleged, defendants breached the applicable duty of care by

8   acting unreasonably, carelessly, negligently and/or recklessly.

9        181. As a direct and proximate result of defendants' conduct, Plaintiff suffered injuries and

10  damages as set forth above in the separately enumerated primary claims.

11       182. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

12  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

13  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

14  and deter such conduct.

15                              **COUNT 15**

16       183. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

17  the allegations of said paragraphs as though expressly set forth at length at this point.

18       184. Monell Failure to Train under the Ohio Constitution and Bill of Rights, the Nevada

19  Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

20  against Lawrence County.

21       185. Defendant failed to properly screen, hire, train, instruct, monitor, supervise, evaluate,

22  investigate, discipline and/or terminate defendants John Chapman and Does 9 - 10, with

23  deliberate indifference to Plaintiff's constitutional rights in the following manner:

1   with the parties' interactions as described herein. In particular, said defendants had a duty to

2   carefully investigate any criminal activity, to use care to avoid subjecting Plaintiff to an illegal

3   detention, arrest, seizure, retaliation for exercise of free speech, free press, or petition for redress

4   of grievances, use of force, or deprivation of any of the other rights enumerated herein, and to

5   use reasonable care to avoid engaging in biased policing or racial and political affiliation

6   profiling.

7         180. In doing the things herein alleged, defendants breached the applicable duty of care by

8   acting unreasonably, carelessly, negligently and/or recklessly.

9         181. As a direct and proximate result of defendants' conduct, Plaintiff suffered injuries and

10  damages as set forth above in the separately enumerated primary claims.

11        182. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

12  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

13  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

14  and deter such conduct.

15                              **COUNT 15**

16        183. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

17  the allegations of said paragraphs as though expressly set forth at length at this point.

18        184. Monell Failure to Train under the Ohio Constitution and Bill of Rights, the Nevada

19  Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

20  against Lawrence County.

21        185. Defendant failed to properly screen, hire, train, instruct, monitor, supervise, evaluate,

22  investigate, discipline and/or terminate defendants John Chapman and Does 9 - 10, with

23  deliberate indifference to Plaintiff's constitutional rights in the following manner:

38

1       a. To fail to institute, require, and enforce proper and adequate training, supervision,

2  policies, and procedures concerning engaging in defamation in retaliation of those exercising

3  their First Amendment rights;

4       b. To fail to institute, require, and enforce proper and adequate training, supervision,

5  policies, and procedures within the government entity concerning the fear experienced by people

6  of different minorities (including cop watching activists) when interacting with government

7  employees in light of well documented, highly publicized, and disproportionate amount of

8  discrimination committed by government employees against said groups, and the tactics that

9  employees should employ in dealing with said groups in light of such fears (especially where, as

10  here, they have been explicitly made known to the employees);

11       c. To ignore and/or fail to properly investigate, supervise, discipline, and/or terminate

12  employees who have engaged in unlawful or unconstitutional activities.

13       186. The totality of the circumstances of Lawrence County's consistent misconduct

14  including against myself are indicative of a Monell failure to train liability. Discovery will show

15  further proof.

16       187. I was harmed as a direct and proximate result by violations and those harms are

17  enumerated in the separate claims for each primary claim.

18       188. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

19  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

20  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

21  and deter such conduct.

22                             **COUNT 16**

23       189. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

a. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning engaging in defamation in retaliation of those exercising their First Amendment rights;

b. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures within the government entity concerning the fear experienced by people of different minorities (including cop watching activists) when interacting with government employees in light of well documented, highly publicized, and disproportionate amount of discrimination committed by government employees against said groups, and the tactics that employees should employ in dealing with said groups in light of such fears (especially where, as here, they have been explicitly made known to the employees);

c. To ignore and/or fail to properly investigate, supervise, discipline, and/or terminate employees who have engaged in unlawful or unconstitutional activities.

186. The totality of the circumstances of Lawrence County's consistent misconduct including against myself are indicative of a Monell failure to train liability. Discovery will show further proof.

187. I was harmed as a direct and proximate result by violations and those harms are enumerated in the separate claims for each primary claim.

188. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish and deter such conduct.

**COUNT 16**

189. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

39

1   the allegations of said paragraphs as though expressly set forth at length at this point.

2       190. Failure to intervene under the Ohio Constitution and Bill of Rights, the Nevada

3   Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

4   against all individual defendants.

5       191. The factual allegations show that the individual defendants had a 1) a realistic

6   opportunity to intervene to prevent harm; 2) a reasonable person in the defendant's position

7   would have known that my constitutional rights were being violated; and 3) the defendants did

8   not take reasonable steps to intervene.

9       192. I was harmed as a direct and proximate result by violations and those harms are

10  enumerated in the separate claims for each primary claim.

11      193. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

12  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

13  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

14  and deter such conduct.

15                         **COUNT 17**

16      194. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

17  the allegations of said paragraphs as though expressly set forth at length at this point.

18      195. Civil conspiracy and racketeering under the Ohio Constitution and Bill of Rights, the

19  Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and

20  common law, against all individual defendants.

21      196. The totality of the circumstances show that 1) there was an agreement between

22  defendants to violate my civil rights, defame me, and batter me; 2) there was a single plan that

23  the defendants shared; 3) that defendants committed at least one overt act in furtherance of the

1 | the allegations of said paragraphs as though expressly set forth at length at this point.

2 |     190. Failure to intervene under the Ohio Constitution and Bill of Rights, the Nevada

3 | Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

4 | against all individual defendants.

5 |     191. The factual allegations show that the individual defendants had a 1) a realistic

6 | opportunity to intervene to prevent harm; 2) a reasonable person in the defendant's position

7 | would have known that my constitutional rights were being violated; and 3) the defendants did

8 | not take reasonable steps to intervene.

9 |     192. I was harmed as a direct and proximate result by violations and those harms are

10 | enumerated in the separate claims for each primary claim.

11 |     193. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

12 | conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

13 | allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

14 | and deter such conduct.

15 | **COUNT 17**

16 |     194. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

17 | the allegations of said paragraphs as though expressly set forth at length at this point.

18 |     195. Civil conspiracy and racketeering under the Ohio Constitution and Bill of Rights, the

19 | Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and

20 | common law, against all individual defendants.

21 |     196. The totality of the circumstances show that 1) there was an agreement between

22 | defendants to violate my civil rights, defame me, and batter me; 2) there was a single plan that

23 | the defendants shared; 3) that defendants committed at least one overt act in furtherance of the

1  conspiracy; and 4) I was harmed by that conspiracy. Discovery will show further proof.

2      197. I was harmed, as a direct and proximate result, by the underlying crimes as

3  enumerated in the separate primary claims.

4      198. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

5  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

6  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

7  and deter such conduct.

8                              **COUNT 18**

9      199. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

10  the allegations of said paragraphs as though expressly set forth at length at this point.

11      200. Abuse of power of a jailer under the Ohio Constitution, U.S. Constitution, federal

12  statute, state statute, and common law, against John Chapman.

13      201. The factual allegations show that John Chapman employed his power of a jailer over

14  an inmate in an extravagant manner, contrary to the law of its use, improperly, and to excess.

15      202. I was harmed as a direct and proximate result by being deprived of my liberty for a

16  period of time, being unable to do what I wanted or go where I wanted. I was harmed as a direct

17  and proximate result by having to refrain from exercising my rights, the government suppressing

18  dissent, and loss of public participation. I also experienced, as a direct and proximate result, the

19  negative psychological and emotional impact of the abuse and the chilling effect that this had on

20  the future exercise of my rights for fear of further abuse.

21      203. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

22  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

23  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

41

1 │ conspiracy; and 4) I was harmed by that conspiracy. Discovery will show further proof.

2 │      197. I was harmed, as a direct and proximate result, by the underlying crimes as

3 │ enumerated in the separate primary claims.

4 │      198. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

5 │ conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

6 │ allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

7 │ and deter such conduct.

8 │ **COUNT 18**

9 │      199. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

10 │ the allegations of said paragraphs as though expressly set forth at length at this point.

11 │      200. Abuse of power of a jailer under the Ohio Constitution, U.S. Constitution, federal

12 │ statute, state statute, and common law, against John Chapman.

13 │      201. The factual allegations show that John Chapman employed his power of a jailer over

14 │ an inmate in an extravagant manner, contrary to the law of its use, improperly, and to excess.

15 │      202. I was harmed as a direct and proximate result by being deprived of my liberty for a

16 │ period of time, being unable to do what I wanted or go where I wanted. I was harmed as a direct

17 │ and proximate result by having to refrain from exercising my rights, the government suppressing

18 │ dissent, and loss of public participation. I also experienced, as a direct and proximate result, the

19 │ negative psychological and emotional impact of the abuse and the chilling effect that this had on

20 │ the future exercise of my rights for fear of further abuse.

21 │      203. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

22 │ conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

23 │ allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

1   and deter such conduct.

2                                  **COUNT 19**

3       204. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

4   the allegations of said paragraphs as though expressly set forth at length at this point.

5       205. Abuse of process under the Ohio Constitution and Bill of Rights, the Nevada

6   Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

7   against Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McKnight, Robert Fouch, and

8   Does 1 to 7.

9       206. The factual allegations show that defendants 1) initiated process to achieve an

10  unlawful purpose; and 2) denying me due process.

11      207. I was harmed as a direct and proximate result by being deprived of my liberty for a

12  period of time, being unable to do what I wanted or go where I wanted. I further had to initiate a

13  costly defense. My daily life was disrupted by the defendants as a direct and proximate result. I

14  was harmed as a direct and proximate result by having to refrain from exercising my rights, the

15  government suppressing dissent, and loss of public participation. I also experienced, as a direct

16  and proximate result, the negative psychological and emotional impact of being battered and the

17  chilling effect that this had on the future exercise of my rights for fear of further abuse. I was

18  harmed as a direct and proximate result by being deprived of my liberty for a period of time,

19  being unable to do what I wanted or go where I wanted.

20      208. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

21  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

22  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

23  and deter such conduct.

1 │ and deter such conduct.

2 │ **COUNT 19**

3 │ 204. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

4 │ the allegations of said paragraphs as though expressly set forth at length at this point.

5 │ 205. Abuse of process under the Ohio Constitution and Bill of Rights, the Nevada

6 │ Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

7 │ against Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McKnight, Robert Fouch, and

8 │ Does 1 to 7.

9 │ 206. The factual allegations show that defendants 1) initiated process to achieve an

10 │ unlawful purpose; and 2) denying me due process.

11 │ 207. I was harmed as a direct and proximate result by being deprived of my liberty for a

12 │ period of time, being unable to do what I wanted or go where I wanted. I further had to initiate a

13 │ costly defense. My daily life was disrupted by the defendants as a direct and proximate result. I

14 │ was harmed as a direct and proximate result by having to refrain from exercising my rights, the

15 │ government suppressing dissent, and loss of public participation. I also experienced, as a direct

16 │ and proximate result, the negative psychological and emotional impact of being battered and the

17 │ chilling effect that this had on the future exercise of my rights for fear of further abuse. I was

18 │ harmed as a direct and proximate result by being deprived of my liberty for a period of time,

19 │ being unable to do what I wanted or go where I wanted.

20 │ 208. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

21 │ conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

22 │ allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

23 │ and deter such conduct.

42

**COUNT 20**

209. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

210. Defamation under the Ohio Constitution and Bill of Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law, against Sarah and Doe #8.

211. The factual allegations show that Sarah and Doe #8 did share false factual statements with a third party about my committing the crime of making harassing phone calls. The totality of the facts further indicate that the defamation was done deliberately and maliciously and that the defendants knew that the defamatory statements were about me and were asserted as the truth even though they were false.

212. I was harmed as a direct and proximate result by this damaging of my reputation, which directly resulted in 1) my being harassed by trolls online; and 2) public rallies protesting against my presence in Ironton. The defamation also had a direct and proximate negative psychological and emotional impact on me.

213. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish and deter such conduct.

**COUNT 21**

214. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

215. Inequal access to rent the lobby under the Ohio Constitution and Bill of Rights, the

**COUNT 20**

209. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

210. Defamation under the Ohio Constitution and Bill of Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law, against Sarah and Doe #8.

211. The factual allegations show that Sarah and Doe #8 did share false factual statements with a third party about my committing the crime of making harassing phone calls. The totality of the facts further indicate that the defamation was done deliberately and maliciously and that the defendants knew that the defamatory statements were about me and were asserted as the truth even though they were false.

212. I was harmed as a direct and proximate result by this damaging of my reputation, which directly resulted in 1) my being harassed by trolls online; and 2) public rallies protesting against my presence in Ironton. The defamation also had a direct and proximate negative psychological and emotional impact on me.

213. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish and deter such conduct.

**COUNT 21**

214. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

215. Inequal access to rent the lobby under the Ohio Constitution and Bill of Rights, the

43

1 | Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and

2 | common law, against Ironton and Does 1 to 7.

3 |      216. The factual allegations show that 1) plaintiff is a member of a political affiliation that

4 | is critical of police and police corruption, which is a protected class under § 1985; 2) plaintiff

5 | was exercising his First Amendment Rights in support of his political viewpoints; and 3)

6 | defendants denied him access to use the City Hall lobby for those First Amendment Rights due

7 | to his political viewpoints.

8 |      217. I was harmed as a direct and proximate result by being arrested for trespassing. I was

9 | further harmed, as a direct and proximate result, by the unlawful arrest, excessive force, battery,

10 | unlawful search, and abuse of process and those harms are enumerated under those primary

11 | claims.

12 |      218. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

13 | conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

14 | allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

15 | and deter such conduct.

16 | **COUNT 22**

17 |      219. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

18 | the allegations of said paragraphs as though expressly set forth at length at this point.

19 |      220. Unreasonable seizure under the Ohio Constitution and Bill of Rights, the Nevada

20 | Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

21 | against Ironton.

22 |      221. The facts show that although Waldo justified the initial seizure of my cell phone while

23 | being arrested, under the normal and customary course of arrest, which I don't dispute. Inmates

Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law, against Ironton and Does 1 to 7.

216. The factual allegations show that 1) plaintiff is a member of a political affiliation that is critical of police and police corruption, which is a protected class under § 1985; 2) plaintiff was exercising his First Amendment Rights in support of his political viewpoints; and 3) defendants denied him access to use the City Hall lobby for those First Amendment Rights due to his political viewpoints.

217. I was harmed as a direct and proximate result by being arrested for trespassing. I was further harmed, as a direct and proximate result, by the unlawful arrest, excessive force, battery, unlawful search, and abuse of process and those harms are enumerated under those primary claims.

218. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish and deter such conduct.

### COUNT 22

219. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

220. Unreasonable seizure under the Ohio Constitution and Bill of Rights, the Nevada Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law, against Ironton.

221. The facts show that although Waldo justified the initial seizure of my cell phone while being arrested, under the normal and customary course of arrest, which I don't dispute. Inmates

1  usually aren't allowed to bring their cell phone with them to jail. However, the facts show that

2  my cell phone was not used to facilitate trespass, disorderly conduct, or resisting arrest. Nor was

3  my cell phone returned to me when I was released from Jail. Further, my cell phone was not

4  returned to me until two weeks after Waldo ordered that it be returned to me. When it was

5  returned, all of it was not returned, it was damaged, and it was left in an unusable state.

6          222. Since the phone contained video in the exercise of my First Amendment rights of free

7  speech, and it contained contacts and text messages valuable to my investigation into

8  government corruption, this was a blatant attempt to harm not only my civil rights but the civil

9  rights of others. This was despicable and malicious. I was harmed as a direct and proximate

10 result by having to refrain from exercising my rights, the government suppressing dissent, and

11 loss of public participation. I also experienced, as a direct and proximate result, the negative

12 psychological and emotional impact of the abuse and the chilling effect that this had on the

13 future exercise of my rights for fear of further abuse. Further, as a direct and proximate result, I

14 had to initially rent a phone and then replace the phone.

15         223. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

16 conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

17 allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

18 and deter such conduct.

19                                          **COUNT 23**

20         224. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

21 the allegations of said paragraphs as though expressly set forth at length at this point.

22         225. Conversion under the Ohio Constitution and Bill of Rights, the Nevada Constitution

23 and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law, against

1 | usually aren't allowed to bring their cell phone with them to jail. However, the facts show that

2 | my cell phone was not used to facilitate trespass, disorderly conduct, or resisting arrest. Nor was

3 | my cell phone returned to me when I was released from Jail. Further, my cell phone was not

4 | returned to me until two weeks after Waldo ordered that it be returned to me. When it was

5 | returned, all of it was not returned, it was damaged, and it was left in an unusable state.

6 | 222. Since the phone contained video in the exercise of my First Amendment rights of free

7 | speech, and it contained contacts and text messages valuable to my investigation into

8 | government corruption, this was a blatant attempt to harm not only my civil rights but the civil

9 | rights of others. This was despicable and malicious. I was harmed as a direct and proximate

10 | result by having to refrain from exercising my rights, the government suppressing dissent, and

11 | loss of public participation. I also experienced, as a direct and proximate result, the negative

12 | psychological and emotional impact of the abuse and the chilling effect that this had on the

13 | future exercise of my rights for fear of further abuse. Further, as a direct and proximate result, I

14 | had to initially rent a phone and then replace the phone.

15 | 223. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

16 | conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

17 | allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

18 | and deter such conduct.

19 | **COUNT 23**

20 | 224. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

21 | the allegations of said paragraphs as though expressly set forth at length at this point.

22 | 225. Conversion under the Ohio Constitution and Bill of Rights, the Nevada Constitution

23 | and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law, against

1    Ironton.

2         226. The facts show that although Waldo justified the initial seizure of my cell phone while

3    being arrested, under the normal and customary course of arrest, which I don't dispute. Inmates

4    usually aren't allowed to bring their cell phone with them to jail. However, the facts show that

5    my cell phone was not used to facilitate trespass, disorderly conduct, or resisting arrest. Nor was

6    my cell phone returned to me when I was released from Jail. Further, my cell phone was not

7    returned to me until two weeks after Waldo ordered that it be returned to me. When it was

8    returned, all of it was not returned, it was damaged, and it was left in an unusable state.

9         227. Since the phone contained video in the exercise of my First Amendment rights of free

10   speech, and it contained contacts and text messages valuable to my investigation into

11   government corruption, this was a blatant attempt to harm not only my civil rights but the civil

12   rights of others. This was despicable and malicious. I was harmed as a direct and proximate

13   result by having to refrain from exercising my rights, the government suppressing dissent, and

14   loss of public participation. I also experienced, as a direct and proximate result, the negative

15   psychological and emotional impact of the abuse and the chilling effect that this had on the

16   future exercise of my rights for fear of further abuse. Further, as a direct and proximate result, I

17   had to initially rent a phone and then replace the phone.

18        228. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

19   conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

20   allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

21   and deter such conduct.

22                                         **COUNT 24**

23        229. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

1    Ironton.

2        226. The facts show that although Waldo justified the initial seizure of my cell phone while

3    being arrested, under the normal and customary course of arrest, which I don't dispute. Inmates

4    usually aren't allowed to bring their cell phone with them to jail. However, the facts show that

5    my cell phone was not used to facilitate trespass, disorderly conduct, or resisting arrest. Nor was

6    my cell phone returned to me when I was released from Jail. Further, my cell phone was not

7    returned to me until two weeks after Waldo ordered that it be returned to me. When it was

8    returned, all of it was not returned, it was damaged, and it was left in an unusable state.

9        227. Since the phone contained video in the exercise of my First Amendment rights of free

10   speech, and it contained contacts and text messages valuable to my investigation into

11   government corruption, this was a blatant attempt to harm not only my civil rights but the civil

12   rights of others. This was despicable and malicious. I was harmed as a direct and proximate

13   result by having to refrain from exercising my rights, the government suppressing dissent, and

14   loss of public participation. I also experienced, as a direct and proximate result, the negative

15   psychological and emotional impact of the abuse and the chilling effect that this had on the

16   future exercise of my rights for fear of further abuse. Further, as a direct and proximate result, I

17   had to initially rent a phone and then replace the phone.

18       228. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

19   conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

20   allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

21   and deter such conduct.

22                                          **COUNT 24**

23       229. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

1   the allegations of said paragraphs as though expressly set forth at length at this point.

2        230. Denial of rights and benefits for failure to provide social security number under the

3   Ohio Constitution and Bill of Rights, the Nevada Constitution and Bill of Rights, U.S.

4   Constitution, federal statute, state statute, and common law, against John Chapman.

5        231. The facts show that John Chapman did make it mandatory for me to provide my social

6   security number, did not provide a statutory authority when doing so, did not say how the social

7   security number would be used, and did willfully and maliciously deny me federal benefits and

8   civil rights as a result of my refusal to provide my social security number.

9        232. I was harmed as a direct and proximate result by having to refrain from exercising my

10  rights, the government suppressing dissent, and loss of public participation. I also experienced,

11  as a direct and proximate result, the negative psychological and emotional impact of being

12  threatened and the chilling effect that this had on the future exercise of my rights for fear of

13  further abuse. I was harmed as a direct and proximate result by being deprived of my liberty for a

14  period of time, being unable to do what I wanted or go where I wanted. I was harmed as a direct

15  and proximate result by the delay of receiving federal benefits including food, drink, bedding,

16  telephone, and restroom facilities that an inmate would normally enjoy.

17       233. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

18  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

19  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

20  and deter such conduct.

21                                    **COUNT 25**

22       234. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

23  the allegations of said paragraphs as though expressly set forth at length at this point.

1   the allegations of said paragraphs as though expressly set forth at length at this point.

2       230. Denial of rights and benefits for failure to provide social security number under the

3   Ohio Constitution and Bill of Rights, the Nevada Constitution and Bill of Rights, U.S.

4   Constitution, federal statute, state statute, and common law, against John Chapman.

5       231. The facts show that John Chapman did make it mandatory for me to provide my social

6   security number, did not provide a statutory authority when doing so, did not say how the social

7   security number would be used, and did willfully and maliciously deny me federal benefits and

8   civil rights as a result of my refusal to provide my social security number.

9       232. I was harmed as a direct and proximate result by having to refrain from exercising my

10  rights, the government suppressing dissent, and loss of public participation. I also experienced,

11  as a direct and proximate result, the negative psychological and emotional impact of being

12  threatened and the chilling effect that this had on the future exercise of my rights for fear of

13  further abuse. I was harmed as a direct and proximate result by being deprived of my liberty for a

14  period of time, being unable to do what I wanted or go where I wanted. I was harmed as a direct

15  and proximate result by the delay of receiving federal benefits including food, drink, bedding,

16  telephone, and restroom facilities that an inmate would normally enjoy.

17      233. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

18  conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties

19  allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish

20  and deter such conduct.

21                                  **COUNT 25**

22      234. Plaintiff refers to paragraphs 1-104 of this Complaint and incorporates by reference

23  the allegations of said paragraphs as though expressly set forth at length at this point.

47

1      235. Monell Failure to Train under the Ohio Constitution and Bill of Rights, the Nevada

2  Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

3  against Ironton.

4      236. Defendant failed to properly screen, hire, train, instruct, monitor, supervise, evaluate,

5  investigate, discipline and/or terminate defendants Pam Wagner, Brad Spoljaric, Chance

6  Blankenship, Evan McKnight, Robert Fouch, and Does 1 to 7, with deliberate indifference to

7  Plaintiff's constitutional rights in the following manner:

8      a. To fail to institute, require, and enforce proper and adequate training, supervision,

9  policies, and procedures concerning engaging in defamation in retaliation of those exercising

10  their First Amendment rights;

11      b. To fail to institute, require, and enforce proper and adequate training, supervision,

12  policies, and procedures within the government entity concerning the fear experienced by people

13  of different minorities (including cop watching activists) when interacting with government

14  employees in light of well documented, highly publicized, and disproportionate amount of

15  discrimination committed by government employees against said groups, and the tactics that

16  employees should employ in dealing with said groups in light of such fears (especially where, as

17  here, they have been explicitly made known to the employees);

18      c. To ignore and/or fail to properly investigate, supervise, discipline, and/or terminate

19  employees who have engaged in unlawful or unconstitutional activities.

20      237. The totality of the circumstances of Ironton's consistent misconduct including against

21  myself are indicative of a Monell failure to train liability. Discovery will show further proof.

22      238. I was harmed as a direct and proximate result by violations and those harms are

23  enumerated in the separate claims for each primary claim.

1    235. Monell Failure to Train under the Ohio Constitution and Bill of Rights, the Nevada

2 Constitution and Bill of Rights, U.S. Constitution, federal statute, state statute, and common law,

3 against Ironton.

4    236. Defendant failed to properly screen, hire, train, instruct, monitor, supervise, evaluate,

5 investigate, discipline and/or terminate defendants Pam Wagner, Brad Spoljaric, Chance

6 Blankenship, Evan McKnight, Robert Fouch, and Does 1 to 7, with deliberate indifference to

7 Plaintiff's constitutional rights in the following manner:

8    a. To fail to institute, require, and enforce proper and adequate training, supervision,

9 policies, and procedures concerning engaging in defamation in retaliation of those exercising

10 their First Amendment rights;

11    b. To fail to institute, require, and enforce proper and adequate training, supervision,

12 policies, and procedures within the government entity concerning the fear experienced by people

13 of different minorities (including cop watching activists) when interacting with government

14 employees in light of well documented, highly publicized, and disproportionate amount of

15 discrimination committed by government employees against said groups, and the tactics that

16 employees should employ in dealing with said groups in light of such fears (especially where, as

17 here, they have been explicitly made known to the employees);

18    c. To ignore and/or fail to properly investigate, supervise, discipline, and/or terminate

19 employees who have engaged in unlawful or unconstitutional activities.

20    237. The totality of the circumstances of Ironton's consistent misconduct including against

21 myself are indicative of a Monell failure to train liability. Discovery will show further proof.

22    238. I was harmed as a direct and proximate result by violations and those harms are

23 enumerated in the separate claims for each primary claim.

239. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish and deter such conduct.

## PRAYER FOR RELIEF

Plaintiff prays for damages as follows:

a. For compensatory damages in the amount of $100,000;

b. For punitive damages in the amount of $5,000,000 or in an amount sufficient to punish Defendants conduct and deter similar conduct in the future, pursuant to 42 U.S.C. § 1983.

c. For all applicable statutory penalties;

d. For attorneys' fees pursuant to 42 U.S.C. § 1988;

e. For costs of suit;

f. This Court declare what is lawful and unlawful in my factual allegations;

g. This Court order defendants to stop violating my rights;

h. Quash the restraining order from the bail requirements in the related criminal case;

i. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

## LR 7.1-1 CERTIFICATE OF INERESTED PARTIES

The undersigned, pro se party, certifies that the following may have a direct, pecuniary interest in the outcome of this case: pro-police organizations and individuals.

## DECLARATION OF JOSE MARIA DECASTRO

I declare under penalty of perjury, that the foregoing is true and correct.

49

239. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for my rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Ohio and Nevada law in an amount sufficient to punish and deter such conduct.

## PRAYER FOR RELIEF

Plaintiff prays for damages as follows:

a. For compensatory damages in the amount of $100,000;

b. For punitive damages in the amount of $5,000,000 or in an amount sufficient to punish Defendants conduct and deter similar conduct in the future, pursuant to 42 U.S.C. § 1983.

c. For all applicable statutory penalties;

d. For attorneys' fees pursuant to 42 U.S.C. § 1988;

e. For costs of suit;

f. This Court declare what is lawful and unlawful in my factual allegations;

g. This Court order defendants to stop violating my rights;

h. Quash the restraining order from the bail requirements in the related criminal case;

i. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

## LR 7.1-1 CERTIFICATE OF INERESTED PARTIES

The undersigned, pro se party, certifies that the following may have a direct, pecuniary interest in the outcome of this case: pro-police organizations and individuals.

## DECLARATION OF JOSE MARIA DECASTRO

I declare under penalty of perjury, that the foregoing is true and correct.

49

1    Dated: March 4, 2024              Respectfully submitted,

2

3                                      Jose DeCastro
                                       1258 Franklin St.
4                                      Santa Monica, CA 90404
                                       chille@situationcreator.com
5                                      (310) 963-2445
                                       *Pro Se*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23